152 N.J. Super. 533 (1977)
378 A.2d 83
STATE OF NEW JERSEY, PLAINTIFF,
v.
PATRICK LYONS, DEFENDANT.
Superior Court of New Jersey, Morris County Court.
August 22, 1977.
Mr. Craig V. O'Connor, Assistant County Prosecutor, for State of New Jersey (Mr. Peter D. Manahan, Prosecutor of Morris County, attorney).
Mr. Stuart C. Nisenson for defendant (Mr. Donald A. Rosenfelt, attorney).
STANTON, J.C.C.
This case raises the question whether a person who operates a motorized bicycle (moped) while under the influence of intoxicating liquor may be found guilty of violating the Drunken Driver Statute, N.J.S.A. 39:4-50, which provides penalties for a person "who operates *534 a motor vehicle while under the influence of intoxicating liquor". There is no controlling appellate court authority. In a reported opinion the Camden County Court has concluded that an intoxicated moped driver is not guilty of violating the statute. State v. Gilfesis, 148 N.J. Super. 369 (Cty. Ct. 1977). In the present case I conclude that an intoxicated moped driver is guilty of violating the statute.
This is an appeal from a judgment of conviction in the Municipal Court of the Township of Jefferson. It is a trial de novo on the record below. This opinion supplements the oral opinion which I gave at the hearing of this case, and it must be made part of the record on any appeal to the Appellate Division. See R. 2:5-1(b).
The evidence establishes beyond a reasonable doubt that defendant did, as charged, operate a moped on September 10, 1976, on a public roadway, while under the influence of intoxicating liquor. On that occasion defendant was involved in a near-miss accident with an automobile, fell off his moped and injured himself.
The language of the Drunken Driver Statute, N.J.S.A. 39:4-50, applies to a person "who operates a motor vehicle while under the influence of intoxicating liquor". (Emphasis supplied.) Prior to 1975 the general definitional section of Title 39 defined "motor vehicle" to include "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks." N.J.S.A. 39:1-1. The same section defined "vehicle" to include "every device in, upon or by which a person or property may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." It is clear that under pre-1975 definitions a moped would be classified as a motor vehicle.
In 1975 the Legislature adopted an act which had originated as Assembly Bill No. 1071. L. 1975, c. 250. This act added to N.J.S.A. 39:1-1 a provision defining a "motorized bicycle" as "a pedal bicycle having a helper motor *535 characterized in that the maximum piston displacement is less than 50 cc. rated no more than 1.5 brake horsepower and capable of a maximum speed of no more than 25 miles per hour." The act also changed the motor vehicle definition of N.J.S.A. 39:1-1 so that it now included "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." A parallel change was made in the definition of "vehicle". Thus, in terms of definition, the 1975 act removed mopeds from the class of motor vehicles. Since N.J.S.A. 39:4-50, speaks in terms of a person who operates a "motor vehicle," it would seem that, in terms of a literal reading of definitional provisions, the Drunken Driver Statute does not apply to the driver of a moped.
That, however, is not the end of the matter, because there are statutory provisions other than definitional ones which must be considered. In addition to changing definitional terms, L. 1975, c. 250 also provided as follows:
a. Motorized bicycles shall not be used upon interstate and primary highways or upon the railroad or right-of-way of an operating railroad within the State of New Jersey.
b. Motorized bicycles shall not be operated by a person under 15 years of age.
c. Regulations applicable to bicycles shall apply whenever a motorized bicycle is operated upon any public road or upon any path set aside for the exclusive use of motorized bicycles. [N.J.S.A. 39:4-14.3]
Because the 1975 act imposed upon moped operators the regulations applicable to bicycles, it is necessary to consult N.J.S.A. 39:4-14.1, the statutory section dealing with bicycles. That section reads as follows:
Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by chapter four of Title 39 of the Revised Statutes and all supplements thereto except as to those provisions thereof which by their nature can have no application.
Regulations applicable to bicycles shall apply whenever a bicycle is operated upon any highway or upon any path set aside for the exclusive use of bicycles subject to those exceptions stated herein.
*536 My analysis of the language of L. 1975, c. 250 leads me to believe that the Legislature intended in adopting that act to do nothing more than permit mopeds to be used by persons 15 years of age and older without registering the machines as motor vehicles and without requiring their drivers to be tested and licensed as motor vehicle operators. There is nothing at all in the legislation indicating an intent to exempt mopeds from the rules governing the safe operation of vehicles. Indeed, the contrary is true; the Legislature specifically subjected mopeds to the rules governing the safe operation of vehicles.
A reading of the statement attached to Assembly Bill 1071 by both the Senate and the Assembly Committees on Transportation and Communications supports that analysis. In pertinent part, the statement reads:
Motorized bicycles offer safe convenient and economical local transportation. The United States Department of Transportation's National Highway Safety Administration has recently adopted equipment standards applicable to the particular characteristics of the motorized bicycle. The adoption of these standards enables the importation and sale of motorized bicycles and the purpose of this bill is to enable New Jersey residents to have similar privileges as residents of several other states, Canadian provinces, and many nations of the world as regards the purchasing and operation of such bicycles.
This bill establishes a classification for motor-assisted pedal bicycles (motorized bicycles) in the New Jersey Motor Vehicle Code. Residents 15 years of age and older would be permitted to operate motorized bicycles on roads other than interstate and primary highways.
The official fiscal note to Assembly Bill 1071 reads:
The Official Copy Reprint of Assembly Bill No. 1071 regulates and defines "mopeds."
The Department of Law and Public Safety states that no dollar estimate can be made since this bill merely defines the term "moped" and subjects their operation to the rights and obligations imposed on bicycle operation under Title 39. It is possible that enforcement expenses and revenues may increase for "moped" operators who violate Title 39 but, at present, there is no experience upon which to base projections.
*537 The press statement issued by the Governor on October 31, 1975 when he signed Assembly Bill 1071 into law closely parallels the previously quoted legislative statements and adds nothing new.
It should be noted that the Legislature obviously regarded mopeds as being more difficult to operate and as more dangerous than bicycles. This is shown by the prohibition of their use by persons less than 15 years of age.
In her opinion in State v. Gilfesis, Judge Talbott ruled that the use of the precise phrase "motor Vehicle" in the specific statute in question, the Drunken Driver Statute, N.J.S.A. 39:4-50, is more significant than the general bicycle and moped regulatory policy established by N.J.S.A. 39:4-14.1 and 39:4-14.3 on the principle that where there is a seeming conflict between a general statute and a specific statute covering the subject directly, the specific prevails over the general. 148 N.J. Super. at 373. This principle of statutory construction is a broadly useful one, and Judge Talbott's stature is such that I would normally be disposed to follow her lead in employing it. However, I do not think that the principle should be a controlling one in this case.
N.J.S.A. 39:4-14.1 and 39:4-14.3 clearly establish the basic rule that the operation of a moped upon a public road is subject to the same standards of conduct and care as is the operation of a motor vehicle. Although an intoxicated moped driver may not have the same offensive striking power as does an intoxicated driver of the standard motor vehicle, the intoxicated moped driver is a terribly serious danger to himself, to pedestrians and to other cyclists. Indeed, he is even a danger to persons riding in standard motor vehicles because motorists may be forced into dangerous evasive action when suddenly confronted with an intoxicated moped driver. I can see no reason why the significant public policy of keeping intoxicated persons off the road as stated in N.J.S.A. 39:4-50 should not *538 apply to moped drivers under the broad policy stated in N.J.S.A. 39:4-14.1 and 39:4-14.3.
The menace of having a moped driven on a public road by an intoxicated person is so great and so obvious that I cannot accept the proposition that in exempting mopeds from registration and licensing requirements the Legislature also placed intoxicated moped drivers beyond the reach of the Drunken Driver Statute. It seems to me that the approach to statutory construction which should be followed in this case is the approach outlined by our Supreme Court in Jersey City Chapter Prop. Owner's Ass'n v. City Council, 55 N.J. 86 (1969):
When all is said and done, the matter of statutory construction here will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the common-sense of the situation. [at 100]
See also, State v. Cohen, 73 N.J. 331, 343 (1977). Along the same line is the approach taken by our Supreme Court in In re Suspension of Heller, 73 N.J. 292, 299 (1977), where the Court quoted with approval this language of the highest court of Kansas:
The objective always in statutory construction is to ascertain and give effect to legislative intent. In so doing, where police power is to be exercised, we must fairly read the entire context of legislation on the subject, rather than only an isolated section, and consider the object of that legislation and the evils or mischief sought to be prevented or remedied. [In re Kansas State Bd. of Healing Arts v. Foote, 200 Kan. 447, 436 P.2d 828, 833 (Sup. Ct. 1968)]
In short, it seems to me that the intent of the Legislature would be distorted if we were to attach controlling significance to the use of the phrase "motor vehicle" in the Drunken Driver Statute, N.J.S.A. 39:4-50. In that regard, I note that the phrase "motor vehicle" has been in N.J.S.A. 39:4-50 for at least 40 years. Thus, the phrase was firmly imbedded in that statute long before the 1975 *539 change of the general definitional provisions of N.J.S.A. 39:1-1. Although the Drunken Driver Statute itself was extensively amended in 1977, the amendment was concerned with the standard for intoxication, increased flexibility in sentencing and rehabilitation of the intoxicated driver. No change was made in the use of the phrase "motor vehicle," nor does the legislative history of the 1977 amendment indicate any focusing on that phrase.
I conclude that the policy of subjecting moped operators to the standard of care and conduct imposed on vehicle drivers (this being the policy adopted by the Legislature in N.J.S.A. 39:4-14.1 and 39:4-14.3) is so essential to public welfare and safety that it must prevail over a narrowly definitional analysis of the phrase "motor vehicle" which appears in N.J.S.A. 39:4-50. Accordingly, I find the defendant guilty of violating N.J.S.A. 39:4-50.
Defendant had previously been convicted of driving under the influence of intoxicating liquor. Accordingly, the municipal court judge sentenced him as second offender for the present offense. The sentence imposed was a fine of $500 and revocation of his license to operate a motor vehicle for a period of one year. This is the minimum sentence authorized by the statute for a second offense. I am not permitted on an appeal from a municipal court conviction to impose any greater penalty than that imposed by the municipal court. Hence, the sentence imposed by me shall be the same as that imposed by the municipal court  a fine of $500 and revocation of defendant's license to operate a motor vehicle for a period of one year. I note that if I were not limited by the sentence imposed in the municipal court, I would think seriously about imposing a jail term on defendant. I say this because the record indicates that defendant was not only intoxicated at the time of this incident, but he was also mean and surly. Such a person is particularly dangerous when on the road, and should, in my judgment, be dealt with severely.
*540 Although the penalties imposed on defendant are not as severe as those which I would like to be able to impose, they are significant penalties. It is hoped that they will deter the defendant and others from future intoxicated operation either of a standard motor vehicle or of a moped. It is anomalous that the decision deprives defendant of his right to operate a motor vehicle for a period of one year, but it leaves him free to operate a moped. This results from there being no license requirement for operation of a moped. Entirely aside from the relatively narrow issue of controlling intoxicated drivers, it seems to me that the safety of the public would be well served by a requirement that moped operators be licensed. That, however, is a matter for the Legislature. In the meanwhile, we will have to do the best we can with existing statutes, and, in that regard, let it be noted by defendant that the existing statute mandates a jail term for a third offense.