**STATE of Missouri, Plaintiff–Respondent,**

v.

**Andrew T. LAPLANTE, Defendant–Appellant.**

**No. 26043.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 16, 2004.

Ronald F. Borgmann, Berg, Borgmann, Wilson & Wolk, LLC, Clayton, for appellant.

No respondent's brief filed.

NANCY STEFFEN RAHMEYER, Judge.

Andrew Laplante ("Appellant") appeals his conviction for Driving While Intoxicated on the grounds that the trial court erroneously construed the meaning of "motor vehicle" in the Driving While Intoxicated Statute to include motorized bicycles. We affirm.

On May 3, 2002, at approximately 2:11 a.m., Officer Brian Phillips of the Springfield Police Department observed two mini-bikes, operating without lights, traveling northbound on John Q. Hammons Parkway. One of the mini-bikes was a Honda mini-bike, and the other was what appeared to be a homemade model. When Phillips observed that the operators of the mini-bikes failed to stop at the stop sign at the four-way intersection with Elm Street, he stopped the drivers for committing the traffic violation. Appellant was driving one mini-bike, and his friend, Donnie Bunker, was driving the second one.

As Officer Phillips engaged in conversation with Appellant, he noticed that Appellant's eyes were bloodshot. Phillips asked Appellant if he had been consuming intoxicants and Appellant replied that he had. Meanwhile, Officer Sean Patton of the Springfield Police Department had arrived on the scene, and Phillips turned Appellant over to Patton to investigate whether he was impaired while driving his vehicle. Officer Patton administered several field sobriety tests on Appellant and concluded that Appellant was under the influence of intoxicants and that he could not safely operate a motor vehicle. Patton then arrested Appellant and transported him to the Greene County Jail. At the jail, Patton administered a breathalyzer test on Appellant, and the test results showed that Appellant had blood alcohol content of .102.

The state subsequently charged Appellant with the crimes of Driving While Intoxicated and Disobeying a Stop Sign. At the close of the state's case, Appellant moved for acquittal because the state had not shown beyond a reasonable doubt that he was driving a motor vehicle, as required by Missouri's Driving While Intoxicated Statute. Rather, Appellant argued, he was driving a motorized bicycle, a vehicle that is excluded from the definition of motor vehicle in section 302.010(9).[1] The court took the motion under advisement. Bunker, Appellant's driving companion, who is also a professional motocross racer, then testified on behalf of Appellant and explained that Appellant's mini-bike had an engine size of 49 cubic centimeters and a top speed of around 22–25 miles per hour. On January 27, 2003 the court overruled Appellant's motion for acquittal and found Appellant guilty on both counts.

Statutory construction is a question of law, not fact, and the lower court's ruling on a question of law is not a matter of judicial discretion. *State v. Ruch*, 926 S.W.2d 937, 938 (Mo.App. W.D.1996). Thus, appellate courts conduct an independent review of the lower court's statutory interpretation and afford no deference to

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

its ruling. *Harrison v. King*, 7 S.W.3d 558, 561 (Mo.App. E.D.1999). Absent an erroneous declaration or application of the law, however, we will sustain the judgment of the trial court. *Id.; Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The Driving While Intoxicated Statute, section 577.010, applies to any person who "operates a motor vehicle while in an intoxicated or drugged condition." Because chapter 577 does not explicitly define "motor vehicle," we must interpret the legislative intent of the statute to determine whether the mini-bike in this case should properly be considered a motor vehicle. We note that Respondent, by failing to file a brief, declined to aid in our construction of the statute. Although no penalty exists for such an omission, the failure requires this Court to adjudicate Appellant's claim of error without the benefit of Respondent's potential arguments. *Jordan v. City of Centerville*, 119 S.W.3d 214, 216 (Mo.App. S.D.2003). This imposition is particularly pronounced here because this appeal appears to center on a question of first impression.

■ The goal of statutory construction is "to ascertain the legislative intent from the language of the act, considering the words used in their plain and ordinary meaning, and to give effect to that intent whenever possible." *Connor v. Monkem Co. Inc.*, 898 S.W.2d 89, 90 (Mo. banc 1995). If the statute is ambiguous, a court must construe the statute in a manner that is consistent with the legislative intent, "giving meaning to the words used within the broad context of the legislature's purpose in enacting the law." *Id.*

■ The DWI statute is a criminal statute, and the rule of strict construction requires courts to construe criminal statutes strictly against the state. *State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. banc 1989). Strict construction does not require courts to ignore legislative intent, however, and our construction must also embrace common sense and evident statutory purpose. *Id.; State v. Ballard*, 294 S.W.2d 666, 669 (Mo.App.1956).

Appellant argues that the legislature did not intend for section 577.010 to apply to mini-bike operators. Absent a statutory definition of motor vehicle in chapter 577, Appellant contends, we should look to other statutes regulating vehicle operators, such as those contained in chapter 302, Drivers' and Commercial Drivers' Licenses, to find the legislative intent regarding the meaning of motor vehicle as used in the DWI statute. Section 302.010(9) defines motor vehicle as "any self-propelled vehicle not operated exclusively upon tracks except motorized bicycles, as defined in section 307.180, RSMo."[2] Section 307.180(2) subsequently defines "motorized bicycle" as a vehicle that is similar to Appellant's mini-bike:

> The term **"motorized bicycle"** shall mean any two- or three-wheeled device having an automatic transmission and a motor with a cylinder capacity of not more than fifty cubic centimeters, which produces less than three gross brake horsepower, and is capable of propelling the device at a maximum speed of not more than thirty miles per hour on level ground. A motorized bicycle shall be considered a motor vehicle for purposes of any homeowners' or renters' insurance policy.

The evidence at trial clearly shows that Appellant's mini-bike was a motorized bicycle, Appellant asserts, and because motorized bicycles are specifically excluded from chapter 302's definition of motor vehicle, the legislature did not intend for

2. RSMo Cum.Supp. (2003).

section 577.010 to apply to the operation of motorized bicycles.

Although we agree with Appellant that the mini-bike in this case is appropriately classified as a motorized bicycle, we disagree with Appellant's conclusion that the mini-bike is a not motor vehicle within the purview of the DWI statute. We find that the statute's evident purpose—to protect the public from intoxicated drivers—compels us to include Appellant's mini-bike within the meaning of motor vehicle as used in the statute. We do not find any provision in chapter 577 indicating that the legislature intended to exempt persons operating motorized bicycles from the crime of driving while intoxicated. *See State v. Powell*, 306 S.W.2d 531, 533–34 (Mo.1957) (finding that "farm tractors" are motor vehicles for purposes of the DWI statute). We also cannot find any sound reason for excluding motorized bicycle operators. A motorized bicycle darting down a public street under the control of an intoxicated driver creates a clear hazard to the traveling public, just as a standard motor vehicle operated by an intoxicated driver does. *Id.* at 534. As one of our New Jersey colleagues explains, "Although an intoxicated [motorized bicycle] driver may not have the same offensive striking power as does the intoxicated driver of the standard motor vehicle, the intoxicated [motorized bicycle] driver is a terribly serious danger to himself, to pedestrians and other cyclists." *State v. Lyons*, 152 N.J.Super. 533, 378 A.2d 83, 86 (1977). An intoxicated motorized bicycle driver is also a danger to motorists and their passengers who are forced into evasive action when confronted with the intoxicated driver. *Id.* Because the danger an intoxicated motorized bicycle driver presents is so great and obvious, we cannot conclude that the legislature intended to exclude motorized bicycle drivers from the responsibility of operating their vehicles without the influence of intoxicants.

Furthermore, our review of the statutes regulating the use of motorized bicycles indicates that the legislature intended for operators of mini-bikes on public roadways to be subject to the same safety rules and restrictions as operators of standard motor vehicles.[3] In fact, the legislature has expressly prohibited the use of motorized bicycles on streets or highways without first obtaining a motor vehicle license. According to section 307.195(1), "No person shall operate a motorized bicycle on any highway or street in this state unless the person has a valid license to operate a motor vehicle." In enacting this statute, the legislature appears to have recognized that when motorized bicycles share a public roadway with other motorized vehicles, motorized bicycle riders can pose significant safety risks for themselves as well for the operators of the other vehicles sharing the roadway. By requiring a motor vehicle license for the legal operation of motorized bicycles on streets and highways, the legislature has ensured that motorized bicycle riders have the level of knowledge of traffic rules and physical characteristics that are required of all motor vehicle license holders. Additionally, the requirement of a motor vehicle license indicates that the legislature intends for operators of motorized bicycles on city streets to

---

**3.** Section 307.188 codifies the parallel application of traffic regulations to motorized bicycles, stating:

> Every person riding a bicycle or motorized bicycle upon a street or highway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle as provided by chapter 304, RSMo, except as to special regulations in sections 307.180 to 307.193 and except as to those provisions of chapter 304, RSMo, which by their nature can have no application.

obey all of the laws governing the safe use of motor vehicles, and that a failure to do so is equivalent to such a failure behind the wheel of a standard motor vehicle. Thus, section 307.195 provides ample evidence that the legislature intended for the DWI statute to apply to intoxicated motorized bicycle operators.

Our reading of section 307.195 in conjunction with chapter 302 indicates that while the legislature did intend to exempt motorized bicycle riders from obtaining a license solely for the legal operation of a motorized bicycle, it did not intend to exempt motorized bicycle riders from the responsibility of obeying the safety laws that all motor vehicles traveling on a public roadway must observe. The legislature has recognized the clear hazard an intoxicated motorized bicycle driver poses to the public, and thus, we conclude that the legislature, in enacting the DWI statute, intended to protect the public from intoxicated motorized bicycle operators in addition to intoxicated standard motor vehicle operators. This construction is consistent not only with the broad purpose of section 577.010 but with common sense as well. We affirm.

GARRISON, P.J., and PREWITT, J., concur.