STATE of Missouri, Respondent,

v.

John David SLAVENS, Appellant.

No. SD 31613.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 12, 2012.

Timothy R. Cisar, Lake Ozark, MO, for Appellant.

Steven M. Kretzer, Camdenton, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

John David Slavens ("Slavens") appeals his conviction by the trial court for one count of the class B misdemeanor of driving while intoxicated ("DWI"), a violation of section 577.010.[1] In his sole point relied on, Slavens argues the trial court erred in convicting him of DWI because the incident which led to his conviction was the result of a "dirt bike" accident on his private property. We reverse the judgment of the trial court.

### Factual and Procedural Background

The parties stipulated to the facts and evidence in this case. Slavens was operating a motor vehicle, referenced by both parties as a "non street legal" "dirt bike," in his own yard when he had an accident that necessitated the response of medical personnel, as well as the Missouri State Highway Patrol. Upon arrival of the Highway Patrol officer, Slavens admitted to drinking and consented to having a blood sample drawn to determine his blood alcohol content. The result of that testing indicated Slavens' blood alcohol content was 0.226 percent. He was then charged and convicted of the aforementioned offense of DWI and fined $500.

At issue in this appeal is whether the trial court erred in convicting Slavens under section 577.010, when he was on his private property operating his dirt bike—a motor vehicle, which as stipulated by the parties, was not primarily designed for use on a roadway. He argues that such a conviction was error in that section 577.010 does not specifically "make it a crime to operate a motor vehicle, which is primarily designed for off-road use, in your own yard while intoxicated."

The specific issue for our determination is whether Slavens can be convicted of violating section 577.010 for operating a "non street legal" "dirt bike" on his own private property.

### Standard of Review

■ We note that neither Slavens, nor the State, set forth the applicable standard of review in their briefs. Given the issue presented in this point, we necessarily are called upon to interpret section 577.010. " 'Statutory interpretation is a question of law, and questions of law are reviewed *de novo*.' " *State v. Downing*, 359

---

1. Unless otherwise stated, all statutory references are to RSMo 2000.

S.W.3d 69, 70 (Mo.App. W.D.2011) (quoting *State v. Pesce*, 325 S.W.3d 565, 575 (Mo.App. W.D.2010)). As such, "the lower court's ruling on a question of law is not a matter of judicial discretion." *State v. Laplante*, 148 S.W.3d 347, 348 (Mo.App. S.D. 2004). "Absent an erroneous declaration or application of the law, however, we will sustain the judgment of the trial court." *Id.* at 349.

## Analysis

■ Section 577.010.1 provides that a "person commits the crime of '[DWI]' if he operates a motor vehicle while in an intoxicated or drugged condition." " 'Thus, the elements of the offense of [DWI] are twofold: that the defendant operated a motor vehicle and that he did so while in an intoxicated or drugged condition.' " *State v. Tyler*, 285 S.W.3d 353, 354 (Mo.App. S.D. 2009) (quoting *State v. Ball*, 113 S.W.3d 677, 679 (Mo.App. S.D.2003)). The term "motor vehicle" is not defined in section 577.010. As the dispute in the present matter hinges on whether Slavens' dirt bike is considered to be a motor vehicle for purposes of the DWI statute when it was being operated on his private property as opposed to a public roadway, this Court is called upon to carefully parse that term.

■ The objective of statutory interpretation is to ascertain the intent of the legislature and give effect to that intent as it is reflected in the plain language of the statute. *State v. Lewis*, 188 S.W.3d 483, 487 (Mo.App. W.D.2006). "Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent, which is contrary thereto." *State v. Brushwood*, 171 S.W.3d 143, 147 (Mo.App. W.D.2005). However, "where the language is ambiguous or will lead to an illogical result, we look beyond the plain

and ordinary meaning of the statute." *State v. Daniel*, 103 S.W.3d 822, 826 (Mo. App. W.D.2003).

With these guiding principles in mind, we turn to the phrase "motor vehicle," which has not been defined in connection with section 577.010, in order to determine if a dirt bike is a motor vehicle for purposes of that statute. We are directed in our examination by *Fainter v. State*, 174 S.W.3d 718, 719 (Mo.App. W.D.2005). In *Fainter*, a post-conviction relief matter, the defendant pled guilty to the felony of stealing a lawn mower under section 570.030.3(3)(a), which makes it a crime to steal "[a]ny motor vehicle, watercraft or aircraft[.]" *Id.* at 719; § 570.030.3(3)(a). Fainter then argued in his post-conviction motion that there was an insufficient factual basis for his plea because a riding lawn mower is not a motor vehicle such that he should be granted an evidentiary hearing. *Id.* His request for an evidentiary hearing was denied along with his request for post-conviction relief. *Id.* at 719–20. He then appealed. *Id.*

The reviewing court in *Fainter*, began its examination of the issue by noting not only did the statute the defendant was charged under provide no definition for "motor vehicle," but there were myriad statutes that defined "motor vehicle" in numerous different ways:

The [*Stonger v. Riggs*, 85 S.W.3d 703, 708 (Mo.App. W.D.2002),] court expressly noted ... that 'several statutes separately define 'motor vehicle' for various purposes, and what may be considered a 'motor vehicle' for one statute may not be considered a 'motor vehicle' for another.' Indeed, the Supreme Court, in *Trailiner Corporation v. Director of Revenue*, 783 S.W.2d 917, 921 (Mo. banc 1990), noted that its 'perusal of the statutes' found that the General Assembly had defined 'motor vehicle' 'no less than

ten times through the various chapters.' According to the *Trailiner* court, each definition 'differs to meet the discrete goals addressed during adoption of the several statutes.'

*Fainter*, 174 S.W.3d at 721 (internal citation omitted). The court set out that while the State's argument was that the term " 'any motor vehicle' " "should be read to mean 'every motor vehicle, including riding lawn mowers, golf carts, tractors, or even Zambonis[,]" based on the fact that the purpose of the stealing statute was to punish and deter thefts of such items, it had been noted by the Supreme Court in *Trailiner*, 783 S.W.2d at 921, that "the distinct identity of a motor vehicle is its primary designed function to transport persons and things." *See also State v. Harper*, 353 Mo. 821, 184 S.W.2d 601, 605 (1945). As such, the *Fainter* court stated that "[a]lthough a riding lawn mower is designed to transport a person, its primary function is to cut grass." *Fainter*, 174 S.W.3d at 721. In reversing the decision of the motion court, the court applied the rule of lenity, which

> mandates that all ambiguity in a criminal statute be resolved in a defendant's favor. Under this rule, we are to construe a criminal statute strictly against the government and liberally in a defendant's favor. 'Any doubt as to whether the act charged and proved is embraced within the prohibition must be resolved in favor of the accused.' The rule of lenity applies to interpretation of statutes only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what the legislature intended.

*Id.* at 721 (internal citations omitted). Accordingly, *Fainter* concluded that "[b]ecause the legislature chose not to define 'motor vehicle' for the purpose of the stealing statute, we are left to guess whether it

intended to include a riding lawn mower within the term 'motor vehicle[,]' " such that "[i]n view of the rule of lenity and the Supreme Court's recognition that the primary function of a motor vehicle is to transport people and things, a strict construction of the statute leads us to the conclusion that the legislature did not intend to include a riding lawn mower within the term 'motor vehicle' in [s]ection 570.030.3(3)(a)." *Id.*

■ The same conclusion can be reached in the present matter as it relates to section 577.010. In reaching that determination, this Court reviewed numerous cases involving non-traditional vehicles being operated on public roadways that fell within the definition of "motor vehicle" in several statutes. *See Covert v. Fisher*, 151 S.W.3d 70 (Mo.App. E.D.2004) (holding that operation of a golf cart on a public highway led it to fit the definition of "motor vehicle" found in sections 302.010(9) and 302.010(23)); *Stonger*, 85 S.W.3d at 707 (holding a lawn mower being operated on a public roadway was a "motor vehicle" as that term is defined in section 304.012); *State v. Powell*, 306 S.W.2d 531, 533–34 (Mo.1957) (finding that a farm tractor being operated on a public highway was a "motor vehicle" for purposes of the DWI statute); *Laplante*, 148 S.W.3d at 350–51 (holding that a "motorized bicycle" or "mini-bike" was a "motor vehicle" for purposes of the DWI statute where it was operated on a city street). What we have in the present matter differs from the aforementioned cases in that we have a dirt bike, a non-traditional vehicle in terms of its intended operation on trails and tracks, being operated on a defendant's private property as opposed to a public roadway or highway. Like the lawn mower in *Fainter*, 174 S.W.3d at 721, which had a primary purpose of cutting grass in addition to being able to transport people, the dirt bike in the present matter was

intended to ride through mud, jump piles of dirt and debris, and navigate mountainous off-road terrain in addition to having the ability to transport people. *See Mitchell v. Dir. of Revenue,* 255 S.W.3d 12, 15 (Mo.App. S.D.2008) (holding that for purposes of section 302.505.1 "an off-road bike, or dirt bike" "does not fit the category of a motor vehicle as that term is defined in the applicable definition section, 302.010(9) and (23), in that it was not designed primarily for use on highways nor was it used on a highway by petitioner."). The legislature chose not to define motor vehicle in the DWI statutes such that this Court is left with the question of whether it intended section 577.010 to apply to non-traditional vehicles operated— not on the roads of this State—but on private property.

■ " 'The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language.' " *State v. Ondo,* 232 S.W.3d 622, 628 (Mo.App. S.D.2007) (quoting *State v. Graham,* 204 S.W.3d 655, 656 (Mo. banc 2006)). The rule of lenity is a rule of statutory construction which " 'gives a criminal defendant the benefit of a lesser penalty where there is an ambiguity in the statute allowing for more than one interpretation.' " [2] *Id.* (quoting *State v. Rowe,* 63 S.W.3d 647, 650 (Mo. banc 2002)); *see State v. Severe,* 307 S.W.3d 640, 646 n. 2 (Mo. banc 2010). The rule of lenity "mandates that all ambiguity in a criminal statute be resolved in the defendant's favor[,]" but "for it to apply, an ambiguity must be present." *State v. Bouse,* 150 S.W.3d 326, 331 (Mo.App. W.D.2004). Here, there appears to be an ambiguity in section 577.010—not necessarily in its wording— but in its potential application to situations such as the present one involving the operation of a non-street legal, motorized mode of conveyance on private property. As worded, with no definition of "motor vehicle" referenced and no mention of whether operation on public property is a requirement, "the statute allow[s] for more than one interpretation." *Rowe,* 63 S.W.3d at 650. As such, the rule of lenity is applicable in this case and it requires this Court to resolve any ambiguities in favor of Slavens.

■ Further, even if application of the statute to the present matter were not ambiguous, we are mindful of the fact that in examining such statutes "we are to presume a logical result, as opposed to an absurd or unreasonable one." *State v. Kinder,* 122 S.W.3d 624, 631 (Mo.App. E.D.2003); *see State v. Davis,* 988 S.W.2d 68, 70 (Mo.App. W.D.1999). We are always led to "avoid statutory 'interpretations that are unjust, absurd, or unreasonable.' " *State v. Carroll,* 165 S.W.3d 597, 602 (Mo.App. S.D.2005) (quoting *Benoit v. Missouri Hwy. and Transp. Comm'n,* 33 S.W.3d 663, 673 (Mo.App. S.D.2000)). It is clear in the present matter that a finding that Slavens' operation of his dirt bike on private property exposed him to prosecution under the DWI statute would lead to an illogical result and would open a Pandora's Box of potential locations and situations which would subject people to new criminal liability. Under the reading of the statute urged by the State, every citizen who consumes alcoholic beverages

---

2. We note that some courts have held that prior to application of the rule of lenity, the other canons of construction need to be applied in that the rule is referred to as a "default rule." *Pesce,* 325 S.W.3d at 575; *Turner v. State,* 245 S.W.3d 826, 828 (Mo. banc 2008). Yet, others have started and ended their statutory interpretation review with the rule of lenity. *Fainter,* 174 S.W.3d at 721; *Ondo,* 232 S.W.3d at 628. We have chosen the latter approach.

while on a golf course, then operates a golf cart upon that private property, would be potentially subjected to DWI sanctions. This goes for every person who imbibes spirits and then mows his own lawn with a riding lawn mower, as well as people who operate motorized wheelchairs. In fact, the State in this case agreed that prosecution of an operator of a motorized wheelchair, within the confines of the operator's home, would be possible if this conviction stands. Such unreasonable and absurd results cannot have been intended in the drafting of the statute by the legislature.

Also, it is important to note the "DWI statute is a criminal statute, and the rule of strict construction requires courts to construe criminal statutes strictly against the [S]tate." *Laplante,* 148 S.W.3d at 349; *Daniel,* 103 S.W.3d at 826. "Strict construction does not require courts to ignore legislative intent, however, and our construction must also embrace common sense and evident statutory purpose." *Laplante,* 148 S.W.3d at 349. Common sense clearly dictates that in the present matter, Slavens' dirt bike was not a motor vehicle under the DWI statute in that it was not designed for use on a public roadway or highway and was not being operated on one at the time of the accident, which resulted in his DWI charge. Such a finding does not improperly add an additional element to the DWI statute as urged by the State in its brief and at oral argument. Instead, it more accurately punctuates the purpose and policy of the DWI statute by further defining the factual scenarios in which criminal liability attaches to public actions.

As such, the application of section 577.010 to the present matter would clearly work an illogical result as it would be at odds with the legislature's purpose for the statute, it would defy common sense, and it would newly criminalize a raft of behaviors

that occur on private property on any given day. The term "motor vehicle," under the facts before the Court in this matter, does not include the situation where a dirt bike, that was designed for off-road use only and operated on private property, can be used to subject a defendant to criminal DWI liability. We hold Slavens cannot be convicted of violating section 577.010 for operating a "non street legal" "dirt bike" on his own private property. The trial court erroneously declared and applied the law in the present case in convicting Slavens under section 577.010. *Laplante,* 148 S.W.3d at 349. Point granted.

The trial court's judgment is reversed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., Concur.