Bryce Christopher MCMILLIN,
Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

WD 79818

Missouri Court of Appeals,
Western District.

OPINION FILED: June 13, 2017

Lance A. Riddle, Warrensburg, MO, Attorney for Respondent.

Joshua D. Hawley, Attorney General, and Nathan J. Aquino, Assistant Attorney General, Jefferson City, MO, Attorneys for Appellant.

Before Division Two: Thomas H. Newton, Presiding Judge, and James Edward Welsh and Karen King Mitchell, Judges

Karen King Mitchell, Judge

The Director of Revenue appeals the trial court's reversal of the Missouri Department of Revenue's administrative decision to suspend Bryce Christopher McMillin's driving license under § 302.505.[1] Director argues that the trial court erred in finding that McMillin's scooter was not a "motor vehicle" as set forth in § 302.505 and, therefore, Director could not revoke McMillin's driving privilege. Finding no error, we affirm.

## Background

At 1:45 a.m. on September 24, 2015, Officer Michael Bilbruck observed McMillin operating a scooter on a public road. The scooter had no working taillight and was swerving back and forth. McMillin failed to signal a left turn, and the officer initiated a traffic stop.

During the stop, the officer observed McMillin sway in place while standing. McMillin's eyes were watery, glassy, and bloodshot. McMillin mumbled and smelled of alcohol. McMillin admitted he had been consuming alcohol. Officer Bilbruck conducted a field sobriety test, and his observations suggested McMillin was intoxicated.

Officer Bilbruck arrested McMillin for driving while intoxicated and transported him to the Warrensburg Police Department. At the police department, Cpl. Jason Gilbert conducted a chemical test of McMillin's breath using an Intox EC/IR II breath instrument. The test revealed a blood alcohol content of 0.157%.

On December 9, 2015, the Missouri Department of Revenue held an administrative hearing regarding McMillin's arrest and possible license suspension under § 302.505. The administrative hearing offi-

---

1. All statutory references are to the Revised Statutes of Missouri, 2000, as updated through the 2014 Cumulative Supplement, unless otherwise noted.

cer issued a decision against McMillin. On December 23, 2015, McMillin petitioned for a trial *de novo* pursuant to § 302.535.

The Johnson County Circuit Court held a hearing on the matter and entered a judgment on May 18, 2016. The Circuit Court set aside the administrative decision, finding that McMillin's scooter was not a "motor vehicle" as set forth in § 302.505 and, therefore, Director could not revoke McMillin's driving privilege. Director appeals.

### Standard of Review

■ "On appeal, we review the trial court's judgment, not the administrative order revoking driving privileges." *Covert v. Fisher*, 151 S.W.3d 70, 73 (Mo. App. E.D. 2004) (citing *Barlow v. Fischer*, 103 S.W.3d 901, 905 (Mo. App. W.D. 2003)). "We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *S.H. v. Cannon*, 504 S.W.3d 817, 820 (Mo. App. W.D. 2016) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We review legal issues *de novo*, without any deference to the circuit court's conclusions." *Id.* (citing *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012)). "Where the parties have stipulated to the facts or where one party has admitted the other party's facts in pleadings, testimony, or through counsel, the case involves only legal issues, and we do not defer to the circuit court's conclusions drawn upon stipulated or admitted facts." *Id.* (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010)).

### Analysis

■ Director argues that McMillin's license should be revoked pursuant to § 302.505.1. Section 302.505.1 requires Director to

suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500.

For the purpose of Chapter 302, a "motor vehicle" is "any self-propelled vehicle not operated exclusively upon tracks except motorized bicycles, as defined in section 307.180." § 302.010(10).

Here, the parties agree that there was probable cause to arrest McMillin, that his blood alcohol concentration level exceeded eight-hundredths of one percent (.08%), and that his scooter fell within § 307.180's definition of a motorized bicycle. Therefore, the only issue before us is whether the motorized bicycle was a motor vehicle as contemplated by Chapter 302. This is an issue of statutory construction; "[s]tatutory construction is a question of law, not fact, and the lower court's ruling on a question of law is not a matter of judicial discretion." *State v. Laplante*, 148 S.W.3d 347, 348 (Mo. App. S.D. 2004).

"The rules of statutory interpretation are not intended to be applied haphazardly or indiscriminately to achieve a desired result." *Truman Med. Ctr., Inc. v. Am. Standard Ins. Co.*, 508 S.W.3d 122, 126 (Mo. App. W.D. 2017) (quoting *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "Instead, the canons of statutory interpretation are considerations made in a genuine effort to determine what the legislature intended." *Id.* (quoting *Parktown Imports*, 278 S.W.3d at 672). "This [c]ourt's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue."

*Id.* (quoting *Parktown Imports*, 278 S.W.3d at 672). This court will look beyond the plain text for interpretation only "when the meaning [of the statute] is ambiguous or [a plain text interpretation] would lead to an illogical result defeating the purpose of the legislature." *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998) (quoting *State ex rel. Maryland Heights Fire Prot. Dist. v. Campbell*, 736 S.W.2d 383, 387 (Mo. banc 1987)).

The plain language of § 302.010(10) excludes motorized bicycles from the definition of motor vehicle and mandates that this definition be used throughout Chapter 302, "[e]xcept where otherwise provided." Director does not argue that the language of Chapter 302 is ambiguous, nor does he point to an alternate definition of "motor vehicle" applicable specifically to § 302.505. Rather, he argues that the strict application of the definition of motor vehicle in § 302.010(10) to § 302.505 leads to an illogical result defeating the legislative purpose of § 302.505. Relying on *State v. Laplante*, 148 S.W.3d 347 (Mo. App. S.D. 2004), he contends that § 302.505 was enacted to protect the public from the dangers presented by drunk driving. Therefore, Director argues, excluding motorized bicycles from the definition of motor vehicle for purposes of § 302.505 is illogical and leads to an absurd result because the impaired operation of a motorized bicycle on a public roadway presents a danger to the public. Further, he argues that the limiting language of § 302.010(10) should be interpreted narrowly with a "common sense" statutory construction. This "common sense" construction would exempt motorized bicycles from the definition of motor vehicle solely for licensing purposes. He argues this would uphold the legislature's intent to exempt motorized bicycle riders from obtaining a license solely for the legal operation of a motorized bicycle without also exempting them from the responsibility of obeying the safety laws that all motor vehicles traveling on a public roadway must observe.

It is possible that motorized bicycles were excluded from the definition of motor vehicle in § 302.010 for the reasons articulated by Director. However, we will read beyond the plain language of the text only if plain language "construction [would] defeat the *manifest intention* of the statutory provision." *In re Estate of Tompkins*, 341 S.W.2d 866, 871 (Mo. 1960) (emphasis added). We are unconvinced that the legislature's manifest intention would be defeated by application of the clear and unambiguous language of § 302.010(10). While there may be public policy reasons favoring inclusion of motorized bicycles in the definition of motor vehicle for purposes of § 302.505, their exclusion is not so illogical or absurd as to allow us to ignore the plain language of § 302.010(10).

To evaluate the legislative purpose behind exempting motorized bicycles from the definition of motor vehicle in Chapter 302, it is helpful to look more broadly at the statutory scheme addressing driving while intoxicated. Chapter 302 addresses drivers' licenses and provides, among other things, an administrative procedure for the suspension or revocation of drivers' licenses for certain misconduct. Chapter 577, on the other hand, provides criminal penalties for certain public safety offenses, including driving a motor vehicle while intoxicated. Chapter 577, unlike Chapter 302, does not include a definition of "motor vehicle." Thus, driving a motorized bicycle with a blood alcohol concentration in excess of .08% will support a criminal conviction for driving while intoxicated. *See Laplante*, 148 S.W.3d at 350. Further, such a conviction will be the basis for assessing points against a driver, which can lead to suspension or revocation of driving privileges. § 302.302(8), (9), and (10).

Director argues that imposing these other penalties on a driver who operates a motorized bicycle while intoxicated, but not requiring suspension or revocation under § 302.505, contravenes legislative intent, but we disagree. Though the legislature might have found it appropriate to apply criminal and administrative sanctions against intoxicated operators of motorized bicycles because "motorized bicycle riders can pose significant safety risks for themselves as well [as] for the operators of the other vehicles sharing the roadway," *Laplante*, 148 S.W.3d at 350, it also may have recognized that these particular safety risks are different than those presented by other motor vehicles. Recognizing these differences, the legislature may have chosen to impose a different administrative regulatory scheme for motorized bicycles. We simply cannot say that such a distinction is so illogical as to defeat the manifest purpose of the legislation. Nor would it allow us to ignore otherwise clear and unambiguous statutory language.

Director relies extensively on *Laplante* to support his argument. The defendant in *Laplante* appealed his criminal conviction for driving while intoxicated pursuant to Chapter 577 "on the grounds that the trial court erroneously construed the meaning of 'motor vehicle' in the Driving While Intoxicated Statute to include motorized bicycles." *Id.* at 348. Because Chapter 577 did not define "motor vehicle," Laplante argued that the court "should look to other statutes regulating vehicle operators, such as those contained in Chapter 302, Drivers' and Commercial Drivers' Licenses, to find the legislative intent regarding the meaning of motor vehicle as used in [Chapter 577]." *Id.* at 349. Laplante further argued that "motor vehicle" as used in Chapter 577 should exclude motorized bicycles, as is done in Chapter 302. *Id.* at 350. The Southern District of this court rejected this argument and refused to read Chapters 302 and 577 in tandem as requested by Laplante. *Id.* at 351. While the *Laplante* court concluded "that the legislature, in enacting the DWI statute [Chapter 577], intended to protect the public from intoxicated motorized bicycle operators in addition to intoxicated standard motor vehicle operators," the court implicitly accepted that the legislature may choose to apply a narrower definition of motor vehicle to administrative procedures than to criminal actions. *Id.* at 350-51. Thus, contrary to Director's assertion, *Laplante* does not suggest that the administrative procedures set out in Chapter 302 are to be treated the same as the criminal procedures in Chapter 577.

The language of § 302.010(10) clearly and unambiguously applies the definition of motor vehicle, included therein, throughout Chapter 302, including to the suspension and revocation provisions of § 302.505. While Director identifies various policy reasons against applying the definition of motor vehicle in § 302.010(10) to § 302.505, we cannot conclude that the application of the definition to § 302.505 leads to a sufficiently illogical or absurd result. The legislature may choose to apply less stringent civil penalties to intoxicated operators of motorized bicycles than to intoxicated operators of larger vehicles. Simultaneously, it may choose to apply the same criminal penalties to drivers of both motorized bicycles and larger vehicles. We will not question the wisdom of these legislative decisions. Rather, we will apply the law as written.

## Conclusion

The plain language of § 302.010(10) excludes motorized bicycles from the definition of motor vehicle throughout Chapter 302. Because the suspension and revocation provision of § 302.505 applies to the operation of a motor vehicle while intoxi-

cated, and the parties agree McMillin was operating a motorized bicycle at the time of his arrest, he cannot be subject to the civil penalties of § 302.505.1. We affirm.

Thomas H. Newton, Presiding Judge, and James Edward Welsh, Judge, concur.