STATE of Missouri, Respondent,

v.

Mark STARKEY, Appellant.

No. ED 97352.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 2, 2012.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Timothy A. Blackwell, Jefferson City, MO, for Respondent.

ROY L. RICHTER, Judge.

Mark Starkey ("Appellant") appeals from the trial court's judgment, following a jury trial, convicting him on four counts of aggravated stalking, Section 565.225, RSMo Cum.Supp.2008.[1] We affirm.

## I. BACKGROUND

Appellant was married to Joanna Wilson ("Joanna") for twenty-one years, during which time they lived in Texas. Joanna left Texas in late 2007 or early 2008 and moved to St. Louis. She traveled back and forth from St. Louis to her hometown of Poplar Bluff and reestablished a relationship with Rodney Barker ("Barker"), who had known Joanna in high school. Joanna and Barker were having an affair. Appellant and Joanna eventually divorced.

In January 2008, Appellant called Barker and asked Barker to describe his sexual relationship with Joanna. Barker told Appellant not to call him anymore, but Appellant kept calling. The frequency of

---

1. All subsequent statutory citations are to RSMo Cum.Supp.2008, unless otherwise indi-    cated.

Appellant's calls increased to the point of approximately forty phone calls within a twenty-four-hour time period. Appellant left messages on Barker's answering machine, yelling and using vulgar language. Appellant threatened to blow Barker's head off, and threatened to send people to rape Barker's grandchildren. Barker also received letters from Appellant with pornographic photographs and vulgar language. Barker complained to the police in February and April 2008.

*Stalking the Prosecutors*

The prosecuting attorney of Butler County, Kevin Barbour ("Prosecutor"), and his office filed charges of aggravated stalking against Appellant. Judge John Bloodworth ("Judge Bloodworth") signed a warrant for Appellant's arrest. He later recused himself at the request of Appellant and defense counsel because he went to high school with Barker, but did not socialize with him or know where Barker lived. Judge Bloodworth has a practice of disclosing the relationship if he knows a party to the case, and recusing if he is requested to do so.

In May 2008, Appellant was arrested in Texas on the aggravated stalking charges involving Barker, but was placed on a twenty-four hour hold and was then released on bond. The charges were dismissed after a preliminary hearing. An assistant prosecuting attorney for Butler County, Paul Oesterreicher ("Asst. Prosecutor"), handled the preliminary hearing. The charges were re-filed in October 2008. Judge Bloodworth signed the warrant. Appellant was arrested again, and again, was released on bond.

In October 2008, the Prosecutor's Office began receiving calls from Appellant. Kendra Hampton Gore ("Gore"), the receptionist, generally took the calls, but Cheryl Link ("Link"), the Prosecutor's secretary, also answered the phone. Appellant identified himself as "Mark Starkey" and Gore could recognize his voice on calls thereafter. Link also answered calls from Appellant, who identified himself. Appellant would ask to speak with Prosecutor or Asst. Prosecutor, but the receptionist would take a message rather than putting the calls through. Appellant used vulgar language toward the staff. The secretaries began keeping a log of the calls, including calls on November 15, 17, 18, 21, and 24, 2008. On November 24, 2008, Appellant stated that if Prosecutor did not call off the warrants and if the judge did not get off his back, he was going to blow up the building. Link told Prosecutor and Asst. Prosecutor about the call. On the same day, less than ten minutes later, Gore took a call in which Appellant said to "tell [Prosecutor] and [Asst. Prosecutor] to report themselves now" or they would be killed. He also used vulgar language. Gore communicated the message to Prosecutor and Asst. Prosecutor. Within the same hour, Appellant called Link again, regarding "getting ready to take a magic carpet ride out of this world," and then Appellant hung up the phone. Link decided to try to record as many of the calls as she could. One such call stated "somebody" would get killed.

In addition to the phone calls, the Butler County Prosecuting Attorney's Office received numerous faxes, totaling seventy-two pages, from one Texas phone number, (903)432–4332, from October 27 through November 21, 2008. Some had Appellant's name in them. Asst. Prosecutor was aware of all of the faxes, some of which he pulled off the fax machine himself. In the faxes, Appellant claimed the proceedings against him were unlawful, that Prosecutor, Asst. Prosecutor, and Judge Bloodworth were perpetrating a fraud and should report themselves to federal authorities and go to jail, and the case should

be dismissed. Some faxes took issue with Judge Bloodworth's jurisdiction and involvement in the case. Appellant's demands were in letter form or "press release" form rather than legal pleadings. One fax referred to the saying, "don't mess with Texas," while others used profanity and warned, "Gonna be a tough week boys ...," referring to hillbilly lawyers. Link observed the faxes all came from the same area code and collected them in a file folder. She kept Prosecutor and Asst. Prosecutor informed on the matter.

Asst. Prosecutor also received two copies of a letter containing partially nude photographs of Joanna and referring to "devil play" in two separate envelopes addressed to Asst. Prosecutor's wife. The envelopes had return address labels with Barker's name and address. The same copies were sent in envelopes to the Prosecutor's Office, Prosecutor's wife at their home address, Judge Bloodworth and his wife separately, and the courthouse.

Asst. Prosecutor's family received at least one message on their answering machine. Asst. Prosecutor was concerned that Appellant had managed to find his address and home phone number, and was aware of the calls containing Appellant's threats to kill him. He made arrangements for his children to stay with his in-laws if he knew that Appellant was coming to town.

Prosecutor also was aware of the faxes, letters, and phone calls coming into the Prosecuting Attorney's Office. He received at least one call at his home as well. Although he hung up, the phone continued to ring every ten to fifteen minutes all night long, for six or seven hours. In one phone call, Appellant asked questions about Prosecutor's ex-wife and his father. Prosecutor listened to most of the recorded calls, including one that stated he would be killed if he didn't call off the

warrants. Prosecutor was aware of the threats to kill him, as well as the threat to blow up the building. He was "quite concerned" about the threats and kept a gun close by him in his truck. He gave guns to his wife and son; the son kept the gun at his own home. Prosecutor also had safety glass and a panic button installed in his office, he had police officers in his office and escorting him across the street to the courthouse on occasion. An officer followed Prosecutor all day at court appearances when he believed Appellant was going to appear. Prosecutor thought Appellant seemed very determined and obsessive.

Appellant pled guilty to the federal charge of using an instrument of commerce to threaten to destroy a building by means of an explosive. He was sentenced to ten months in federal prison.

*Stalking Judge Bloodworth*

In addition to the communications Appellant made with the Prosecuting Attorney's Office, Appellant also called and identified himself to the Butler County Circuit Clerk's Office clerks on numerous occasions. When he was not transferred to Judge Bloodworth, he called the clerks vulgar names. Appellant sent many faxes to Judge Bloodworth, one of which purported to be an arrest warrant for Judge Bloodworth, Prosecutor, and Asst. Prosecutor. Another fax warned, "better buckle up scum ... gonna be a tough week boys," also addressing the victims as hillbilly lawyers. Other faxes referenced Judge Bloodworth's male anatomy as well as his wife.

Appellant also called Judge Bloodworth's home and left a message on his answering machine. Appellant stated, "There's gonna be a lot of people needing to go to medical facilities if John Boy Bloodworth don't remove his fraudulent warrants," and concluded with profanities.

After the call, Judge Bloodworth and his wife were worried about their family's safety. They had one son, who was instructed to lock the doors and not to open them until he looked outside to see who was there. Panic buttons were installed in the circuit clerk's office and staff was instructed to push the button if Appellant came to the window. Appellant's picture was posted in the clerk's office as well. Judge Bloodworth was aware of the phone calls, letters and faxes received from Appellant.

On December 7, 2009, the Missouri Attorney General's Office ("State"), acting as Special Prosecutor, filed a complaint in the Circuit Court of Butler County, charging Appellant with four counts of aggravated stalking as to Barker, Prosecutor, Asst. Prosecutor, and Judge Bloodworth, respectively. Appellant filed numerous *pro se* motions to dismiss the case, including a motion to dismiss for lack of jurisdiction, or to disqualify the prosecutor, which were subsequently denied. The trial court granted Appellant's motion for a change of venue to St. Louis County.

A trial took place from July 25 through 28, 2011, in the Circuit Court of St. Louis County. Appellant filed motions for judgment of acquittal at the close of the State's evidence and at the close of all of the evidence, which motions were denied. The jury found Appellant guilty of four counts of aggravated stalking, and the trial court sentenced Appellant to consecutive sentences of four years' imprisonment on each count. This appeal follows.

## II. DISCUSSION

Appellant raises five points on appeal. The first three points allege the trial court erred in overruling Appellant's motion for judgment of acquittal and entering judgment and sentence accordingly, based on an insufficiency of evidence. Fourth, Appellant alleges the trial court erred in overruling Appellant's Motion to Dismiss for Lack of Jurisdiction based on a lack of evidence that Appellant's conduct, or a result of such conduct, occurred within this State. Finally, Appellant alleges the trial court abused its discretion in overruling Appellant's objection to Prosecutor's testimony that he found a threat to be a "credible threat" because this invaded the province of the jury. We will discuss each point in turn, along with its applicable standard of review.

### A. Insufficiency of Evidence Claims (Points I, II, and III)

In his first three points, Appellant alleges the trial court erred in overruling his motion for judgment of acquittal and entering judgment and sentence as to Count IV, Count II, and Count III, charging aggravated stalking, Section 565.225, related to Judge Bloodworth, Prosecutor, and Asst. Prosecutor, respectively. Appellant challenges the sufficiency of the evidence, in violation of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution. In each of these three points, Appellant also argues phone calls, letters and faxes are no longer sufficient to satisfy the credible threat element; and some of the phone calls and faxes serve a legitimate purpose or included constitutionally protected activity.

#### 1. Standard of Review

This Court's review of a challenge to the sufficiency of evidence supporting a criminal conviction is limited to a determination of whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *State v. Farris*, 125 S.W.3d 382, 387 (Mo.App. W.D.2004), *cit-*

*ing State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). In applying this standard of review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inference to the contrary. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). The Court does not act as a "super juror" with veto powers over the conviction, but gives great deference to the trier of fact. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998). The Court does not reweigh the evidence, resolve evidentiary conflicts, or decide the credibility of witnesses. *State v. Edwards,* 365 S.W.3d 240, 250 (Mo.App. W.D.2012).

### 2. Analysis

■ In considering the sufficiency of the evidence, there must be sufficient evidence of each element of the offense. *State v. Dixon,* 70 S.W.3d 540, 544 (Mo. App. W.D.2002). The elements of an offense are derived from the statute establishing the offense or, when relevant, common law definitions. *Id.* Defendant was convicted of aggravated stalking, which is committed by a person "if he or she purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person, and: (1) Makes a credible threat; ..." Section 565.225.3(1). For purposes of this section, "course of conduct" is defined as

> a pattern of conduct composed of two or more acts, which may include communication by any means, over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of course of conduct. Such constitutionally protected activity includes picketing or other organized protests.

Section 565.225.1(1). Additionally, a "credible threat" is defined as

a threat communicated with the intent to cause the person who is the target of the threat to reasonably fear for his or her safety, or the safety of his or her family, or household members or domestic animals or livestock ... kept at such person's residence or on such person's property. The threat must be against the life of, or a threat to cause physical injury to, or the kidnapping of, the person, the person's family, or the person's household members or domestic animals or livestock ... kept at such person's residence or on such person's property.

Section 565.225.1(2). Finally, the term "harasses" is defined in this section as "to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed." Section 565.225.1(3).

### A. Evidence was sufficient to submit to jury aggravated stalking of Judge.

■ In his first point, Appellant alleges the State failed to prove that Appellant made a credible threat when he made a phone call, saying, "a whole lot of people are going to need to go to medical facilities" if Judge Bloodworth did not remove "his fraudulent warrants." Appellant claims that Judge Bloodworth was not the target of the alleged threat, and it was not a threat against the life of, or to cause physical injury to Judge Bloodworth. Additionally, Appellant argues the phone calls and faxes would not cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed.

Appellant argues that the majority of the phone calls and faxes that reached Judge Bloodworth served a legitimate purpose or included constitutionally protected activity. Moreover, Appellant contends

that the phone call regarding the need for a lot of people to go to medical facilities was the only evidence alleged to satisfy the "credible threat" element, and that a single incident is not enough to qualify as a course of conduct. *State v. Mabry*, 285 S.W.3d 780 (Mo.App. E.D.2009). We disagree with Appellant's contentions and analysis.

The jury in this case was instructed on Count IV to find Appellant guilty of aggravated stalking if it found that from October 1, 2008, though December 5, 2008, Appellant "repeatedly and purposely harassed Judge John Bloodworth by making numerous phone calls and sending faxes to the offices of the Circuit Clerk and by making phone calls to Judge John Bloodworth's home," that Judge Bloodworth "suffered substantial emotional distress," and that Appellant "made a credible threat with the intent to place Judge John Bloodworth in reasonable fear of death or serious physical injury by making a threatening phone call to his home."

■ As outlined in Section 565.225, first, a harassing course of conduct is required. Noting that constitutionally protected communication is not included within the meaning of the course of conduct, we look at the communication that is protected as it contrasts with Appellant's communications directed at Judge Bloodworth. The evidence at trial established that Appellant engaged in a continuing, and arguably, escalating, course of conduct through his many acts of communication via phone, fax and letter. Several of Appellant's phone calls and faxes used vulgarities, including name-calling, warnings, such as to "buckle up," and references to Judge Bloodworth's male anatomy and his wife. Some of Appellant's name-calling may have offended Judge Bloodworth, his clerks, and his family, but "it is highly doubtful that the government has much of a legitimate interest in punishment of 'name-calling' between private parties." *State v. Swoboda*, 658 S.W.2d 24, 27 (Mo. banc 1983). However, the prohibition against conduct directed at a specific person, which serves no legitimate purpose that would cause a reasonable person to be frightened, intimidated, or cause emotional distress, "punishes actions which by their very occurrence inflict injury or tend to incite an immediate breach of the peace." *State v. Vaughn*, 366 S.W.3d 513, 521 (Mo. banc 2012) (internal citation omitted). Such activity is unprotected by the First Amendment. *Id.* Here, the content of Appellant's communications, along with their repetition, frequency, and reach into his private life worried Judge Bloodworth to the point that he, his family, and his staff kept watch for Appellant. Safety measures were also put into place in the judge's office. The evidence was sufficient to submit to the jury the issue of Appellant harassing Judge Bloodworth as a course of conduct.

■ Next, the statute requires the additional element of "a credible threat." Section 565.225.3(1); Section 565.225.1(2). In addition to the harassing course of conduct found, a single threat is all that is needed. The evidence on the record shows that Appellant made a phone call to Judge Bloodworth's home and threatened him to remove his warrants or many people would be hurt. This reasonably caused Judge Bloodworth to fear for his safety and the safety of his family, especially since the call came to his home.

■ Finally, we review Appellant's contention that the change in the statutory language of Section 565.225.1(2) eliminated the fulfillment of the "credible threat" element by phone calls, letters or faxes. We disagree. When considering statutory amendments, the court presumes that the legislature intended to accomplish some

purpose, one of which may be to clarify and detail an existing law. *Bank of Urbana v. Wright,* 880 S.W.2d 921, 924 (Mo. App. S.D.1994). The legislature removed from the definition of "credible threat" the language that it "may include a threat communicated to the targeted person in writing, including electronic communications, by telephone, or by the posting of a site or message that is accessible via computer." Section 565.225.1(2), RSMo Cum. Supp.2007. It added an element that the target of the threat may fear for the safety of his family, household members or animals, as well as his own safety. Section 565.225.1(2). The amended statute clarified that a threat must be against the life of, or to cause physical injury to, or the kidnapping of, the target victim or his family, household members, or animals. Section 565.225.1(2). Thus, the elimination of the language Appellant now contests merely eliminated examples of what the credible threat *may* include. The legislature made clear in both versions of the statute that the form of communication by which a threat may occur is unlimited. Section 565.225.1(2). The elimination of the example in Section 565.225.1(2) does not eliminate the telephone, letters, or faxes from the means by which a credible threat can be made, as Appellant contends.

The threat here was one by which Appellant communicated with intent to cause Judge Bloodworth to reasonably fear for his safety or the safety of his family, who was referenced in Appellant's communications. The evidence was sufficient to submit aggravated stalking of Judge Bloodworth to the jury to find whether Appellant was guilty beyond a reasonable doubt. Appellant's first point is denied.

### B. Evidence was sufficient to submit to jury aggravated stalking of Prosecutor.

In his second point, Appellant alleges the trial court erred in that the State failed to prove beyond a reasonable doubt that Appellant made a credible threat with the intent to place Prosecutor in reasonable fear of death or serious physical injury by "threatening to kill him in phone calls he made to the Butler County Prosecuting Attorney's Office," as charged and instructed upon, because Prosecutor never received these calls. Appellant contends the calls were taken by other people, the State did not prove that Appellant made some of the calls, and the calls that the State was able to connect to Appellant were not threats against the life of, or to cause physical injury to Prosecutor since he was not the specific target mentioned in those threats.

Under the same analysis outlined for Judge Bloodworth, *supra,* we next address Appellant's conviction of aggravated stalking as to Prosecutor. The jury was instructed to find Appellant guilty if they found that from October 1, 2008, through December 5, 2008, Appellant "repeatedly and purposely harassed [Prosecutor] by making phone calls and faxes to the office of the Prosecuting Attorney, and sent mail of a pornographic nature," and that Prosecutor "suffered substantial emotional distress," and finally, that Appellant "made a credible threat with the intent to place Prosecutor in reasonable fear of death or serious physical injury by threatening to kill him in phone calls he made to the Butler County Prosecuting Attorney's Office."

Similar to our analysis in Point I, we find evidence on the record of Appellant's harassing course of conduct. The frequency of the calls, faxes, and letters, as well as their content, failed to serve a legitimate purpose and were disturbing to Prosecutor, as they would be to any reasonable person. In response to Appel-

lant's harassing conduct, Prosecutor and his wife and son kept guns with them, police guarded Prosecutor, and security measures were installed in the Prosecuting Attorney's Office. Appellant's voice became identifiable by the clerks who received his frequent calls, and Appellant's faxes were sent from the same Texas number. Although clerks in the Prosecuting Attorney's Office often received Appellant's phone calls and faxes directly, Prosecutor was aware of the calls and faxes, including those threatening to kill him. Furthermore, a threat need not be received by its intended recipient before it can be deemed communicated. *State v. Bernhardt*, 338 S.W.3d 830, 834 (Mo.App. E.D.2011). The evidence on the record indeed showed Appellant threatened Prosecutor and Asst. Prosecutor "to report themselves now" or they would be killed. As Appellant intended, Prosecutor learned of the threats against him, including the threat to blow up the building in which Prosecutor's office was located. Thus, the "credible threat" element of Section 565.225.3(1) was fulfilled. We find the trial court did not err in submitting the issue of aggravated stalking of Prosecutor to the jury to find whether Appellant was guilty beyond a reasonable doubt. Appellant's second point is denied.

### C. Evidence was sufficient to submit to jury aggravated stalking of Asst. Prosecutor.

Third, Appellant alleges the trial court erred in that the State failed to produce sufficient evidence that Appellant made a credible threat with the intent to place Asst. Prosecutor in reasonable fear of death or serious physical injury by "threatening to kill him in phone calls he made to the Butler County Prosecuting Attorney's Office," as charged and instructed upon. Appellant argues Asst. Prosecutor never received these calls;

they were taken by other people. Further, Appellant contends the State did not prove that Appellant made some of the calls, and the calls that the State was able to connect to Appellant were not threats against the life of, or to cause physical injury to Asst. Prosecutor since he was not the specific target mentioned in those threats.

Regarding Asst. Prosecutor, the jury was instructed to find Appellant guilty of aggravated stalking if it found that from October 1, 2008, through December 5, 2008, Appellant "repeatedly and purposely harassed [Asst. Prosecutor] by making numerous phone calls and sending faxes to the office of the Prosecuting Attorney and sent mail of a pornographic nature to [Asst. Prosecutor's] home," and Asst. Prosecutor "suffered substantial emotional distress," and that Appellant "made a credible threat with the intent to place [Asst. Prosecutor] in reasonable fear of death or serious physical injury by threatening to kill him in phone calls he made to the Butler County Prosecuting Attorney's Office."

Here again, similar to our analysis of Appellant's second point on appeal, we find the evidence clearly demonstrates a continuing course of conduct in which Appellant also harasses Asst. Prosecutor through his phone calls, faxes and letters. Appellant asked to speak to Asst. Prosecutor when he called the Prosecutor's Office repeatedly, he sent letters with nude photographs to Asst. Prosecutor, and he even called Asst. Prosecutor's home. This was so concerning to Asst. Prosecutor that he made arrangements for his children to stay elsewhere when Appellant was coming to town. Additionally, the credible threat element of Section 565.225.3(1) was fulfilled with evidence on the record that Appellant called and threatened that Prosecutor and Asst. Prosecutor would be

killed. Moreover, they were both targets of the threat that Appellant would blow up their building. There was sufficient evidence on the record upon which a reasonable jury could find Appellant guilty of aggravated stalking of Asst. Prosecutor beyond a reasonable doubt. Appellant's third point is denied.

## B. Jurisdiction Claim (Point IV)

In his fourth point, Appellant alleges the trial court erred in overruling Appellant's Motion to Dismiss for Lack of Jurisdiction, in that there was no evidence that Appellant's conduct, or a result of such conduct, constituting any element of the offense of aggravated stalking occurred within this State; the evidence only showed that the phone calls, faxes, and letters, constituting the alleged course of conduct and credible threat, occurred in Texas, albeit directed at Missouri residents. Appellant claims this violated his right to a fair trial by an impartial jury of the State and district wherein the crime was committed, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, and Section 541.191.

### 1. Standard of Review

Statutory interpretation is a question of law, which we review *de novo*. *State v. Downing*, 359 S.W.3d 69, 70 (Mo.App. W.D.2011). As such, the trial court's ruling on a question of law is not a matter of judicial discretion. *State v. Laplante*, 148 S.W.3d 347, 348 (Mo.App. S.D.2004). "Absent an erroneous declaration or application of the law, however, we will sustain the judgment of the trial court." *Id.* at 349.

### 2. Analysis

■ Section 541.191.1(1) provides, This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if: (1) Conduct constituting any element of the offense or a result of such conduct occurs within this state.

Section 541.191.1(1), RSMo 2000.

While harassment is the conduct constituting the crime of aggravated stalking, it is defined as conduct directed at a specific person, and causes that person to be frightened, intimidated, or emotionally distressed. Section 565.225.3; 565.225.1(3). Thus, the elements of the crime include the conduct that was carried out by Appellant in Texas as well as the fright, intimidation, or emotional distress which was intended for and occurred in Appellant's targets in Missouri thereafter. Moreover, Section 541.191.1(1) does not require that the result be an *element* of the offense. The statute requires simply the *result* of the conduct constituting the offense occur in Missouri. The evidence on the record clearly shows the results of Appellant's actions directed toward each of these four individuals for which he was charged with aggravated stalking occurred in the state of Missouri. The concern, extra precautions, and overall emotional distress of Barker, Judge Bloodworth, Prosecutor, and Asst. Prosecutor all took place in Missouri.

The trial court did not err in overruling Appellant's motion to dismiss. The trial court had jurisdiction in Missouri. Appellant's fourth point is denied.

## C. "Credible Threat" Testimony Claim (Point V)

In his fifth point, Appellant alleges the trial court abused its discretion in overruling his objection to Prosecutor's testimony that he found the threat to be a "credible threat" because this invaded the province of the jury on the "credible threat" element of aggravated stalking, and preju-

diced Appellant under Counts II and III involving Prosecutor and Asst. Prosecutor, since the same threat was alleged to have been a "credible threat" as to both those alleged victims. Appellant contends this violated his rights to due process of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

### 1. Standard of Review

■■■ Allegations of error to be preserved for appellate review must be included in a motion for new trial. *State v. Johnson*, 358 S.W.3d 574, 575 (Mo.App. S.D.2012). Appellant's motion for a new trial does not raise and preserve an issue as to testimony from Prosecutor that the threats posed a credible threat. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted." Rule 30.20. Plain error review involves a two-step analysis. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id.* If such error is found, we consider whether the claimed error resulted in a manifest injustice or miscarriage of justice. *Id.* at 607–08. The appellant bears the burden of showing that the trial court committed an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage of justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

### 2. Analysis

■■■ During trial, Prosecutor testified he was aware of Appellant's threats to blow up the building and to kill Prosecutor. The following exchange occurred:

Q: Did you find the threat to be a credible threat? Did you believe it?

Prosecutor: I wouldn't—

Defense attorney: Objection, Your Honor, invades the province of the jury.

Court: Overruled.

Prosecutor: Yes, in my mind it was very credible. He seemed determined and obsessive, and that's the kind of person in my mind that's more likely to carry through with something. It's not something—obviously he's not going to calm down about it, and we weren't going to stop our prosecution. But of course when we became victims[,] that's when then it became appropriate under the law to contact you guys so, yeah.

■■■ Appellant argues that the jury would likely view Prosecutor as a legal expert. *State ex rel. Taylor v. Moore*, 136 S.W.3d 799, 802 (Mo. banc 2004). Although an expert may testify as to his or her opinion on an ultimate issue in a criminal case, it must not invade the province of the jury and the expert is not allowed to substitute his or her reasoning and conclusions for that of the jury upon the issue before the jury. *State v. Clements*, 789 S.W.2d 101, 109 (Mo.App. S.D.1990). An ordinary lay witness generally may not testify regarding the witness's opinion on a matter in dispute because the lay witness lacks specialized knowledge about the matter and therefore, the jury and lay witness are in equal positions to form an accurate opinion. *State v. Presberry*, 128 S.W.3d 80, 86 (Mo.App. E.D.2003). A lay witness is permitted to give opinion testimony about a matter in dispute when the lay witness's opinion is based on knowledge not available to the jury and would be helpful to the jury in reaching the jury's own opinion. *State v. Jefferson*, 341 S.W.3d 690, 697 (Mo.App. S.D.2011).

Here, although Prosecutor was an attorney, he was not testifying as an expert. Prosecutor was a victim of the crime and his testimony was necessary to establish elements of the offense. When asked whether he found the threat against him "credible," the question was further explained with another question as to whether Prosecutor believed the threat. Only Prosecutor could answer this question. Because Prosecutor's opinion here was based on knowledge not available to the jury and was helpful to the jury in reaching its own conclusions, Prosecutor's testimony did not invade the province of the jury. We see no facial grounds for finding a manifest injustice or miscarriage of justice in the trial court's ruling on defense counsel's objection. We decline further review for plain error. Appellant's fifth point is denied.

### III. CONCLUSION

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and ANGELA T. QUIGLESS, J., concurs.