No. 121,475

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MICHAEL VINCENT MEJIA,
*Appellee*.

SYLLABUS BY THE COURT

A conviction from another state for driving under the influence may be used to enhance a DUI charge under K.S.A. 2019 Supp. 8-1567 from a misdemeanor to a felony or to increase the punishment of a recidivist, even though the other state's statute proscribes a broader range of conduct. The two statutes need only be generally comparable as defined in K.S.A. 2019 Supp. 8-1567(j).

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed May 22, 2020. Reversed and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Danielle Hamilton Slate*, public defender, and *Michelle Durrett*, deputy public defender, of Olathe, for appellee.

Before MALONE, P.J., ATCHESON and SCHROEDER, JJ.

ATCHESON, J.: The State charged Defendant Michael Vincent Mejia with driving under the influence, a violation of K.S.A. 8-1567, and relied on three Missouri convictions to elevate the offense from a misdemeanor to a felony. The Johnson County

District Court declined to bind Mejia over at the preliminary hearing because his Missouri convictions were based on a statute that proscribed a broader range of conduct than K.S.A. 8-1567. The State has appealed.

We reverse and remand with directions to the district court to reinstate the felony DUI charge against Mejia. The Kansas Legislature has amended K.S.A. 8-1567 to permit charging and sentencing enhancements for DUIs based on out-of-state convictions under statutes that are comparable to Kansas law—meaning "similar to" rather than the same as or narrower than Kansas law. The amendment applies in this case. The relevant Missouri statute, Mo. Rev. Stat. § 577.010, is similar to K.S.A. 8-1567, so Mejia's convictions support the felony charge, consistent with the legislative policy behind the escalating punishment of recidivist drunk drivers. Intoxicated drivers pose an indisputably serious and, indeed, often lethal danger to the motoring public.

CASE HISTORY

The factual circumstances of Mejia's arrest in October 2018 are irrelevant to the issue before us. The State initially charged Mejia with a misdemeanor DUI and later filed an amended complaint elevating the charge to a fourth offense and, thus, a felony under K.S.A. 2018 Supp. 8-1567. The State identified three convictions Mejia had for violating Mo. Rev. Stat. § 577.010 that proscribes "driving while intoxicated" as the basis for the felony charge.

Mejia filed a motion challenging the use of his Missouri convictions to elevate the DUI charge to a felony. After further briefing, the district court filed a seven-page journal entry finding that the State could not rely on the Missouri convictions under Mo. Rev. Stat. § 577.010 because that statute proscribed a broader range of conduct than K.S.A. 8-1567. In reaching that conclusion, the district court relied, in part, on *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), that held out-of-state convictions used in establishing

2

defendants' criminal histories under the Kansas Criminal Code had to prohibit the same or a narrower range of conduct to be comparable to a Kansas crime. The district court also held that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its application in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), and *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015), limited its review to a comparison of the statutory elements of Mo. Rev. Stat. § 577.010 and K.S.A. 2018 Supp. 8-1567 without considering the facts underlying Mejia's Missouri convictions. The ruling, issued in early May 2019, did not grant Mejia any specific relief and simply outlined the district court's view on how his Missouri convictions should be treated.

The district court held a preliminary hearing about three weeks later. The State had also charged Mejia with driving while suspended under K.S.A. 2018 Supp. 8-262 and felony evading or attempting to elude a police officer under K.S.A. 2018 Supp. 8-1568. Adhering to its earlier written ruling, the district court declined to bind Mejia over for trial on the felony DUI charge. The district court found probable cause to hold Mejia for trial on the other felony and set the driving while suspended charge for trial. Shortly after the district court's ruling at the preliminary hearing, the State dismissed both of those charges without prejudice. The State has appealed the district court's rejection of the felony DUI charge.

LEGAL ANALYSIS

*A. Legal Basis for State's Appeal; Standard of Review*

Before turning to the principal issue, we dispose of Mejia's argument that the State has improperly appealed the district court's ruling. In a criminal case, the State may appeal adverse rulings only in specific statutorily identified circumstances. A district court's dismissal of a complaint is one of them. K.S.A. 2019 Supp. 22-3602(b)(1). Here,

3

the district court effectively dismissed the complaint against Mejia for felony DUI when it refused to bind him over for trial on that charge. The district court then granted the State's motion to dismiss without prejudice the remaining charges against Mejia. Taken in tandem, the district court's refusal to hold Mejia on the felony DUI charge and its order of dismissal of the other charges brought the State within the scope of K.S.A. 2019 Supp. 22-3602(b)(1). See *State v. Phelps*, 266 Kan. 185, 194, 967 P.2d 304 (1998); *State v. Freeman*, 234 Kan. 278, 282, 670 P.2d 1365 (1983). The State, therefore, has properly appealed the district court's dismissal of the felony DUI charge.

The State's use of Mejia's Missouri convictions as predicate offenses under K.S.A. 2018 Supp. 8-1567 does not rest on the district court's resolution of conflicting testimony or other disputed facts. Rather, we must construe the Kansas and Missouri statutes governing drunk driving in light of established legal principles and a few settled facts. The task presents only questions of law we may answer without deference to the district court. *State v. Turner*, 293 Kan. 1085, 1086, 272 P.3d 19 (2012) (statutory construction presents question of law subject to unlimited review on appeal); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (2015) (when material facts undisputed, issue presents question of law).

*B. Misplaced Reliance on* Wetrich *as Controlling Authority*

We now take up the propriety of the district court's decision. The basic flaw in Mejia's argument and, in turn, the district court's ruling lies in the assumption that *Wetrich* governs. The *Wetrich* decision sets a standard for determining the comparability of out-of-state criminal convictions to Kansas crimes for purposes of computing defendants' criminal histories for sentencing under the Kansas Criminal Code. That is a broad function applicable to hundreds of crimes defined in Chapter 21.

4

But the Kansas Supreme Court has recognized that K.S.A. 8-1567, outlawing driving under the influence, is distinct from Chapter 21—it reposes in Chapter 8—and should be treated as an essentially self-contained proscriptive and punitive statute. *State v. Reese*, 300 Kan. 650, 654, 333 P.3d 149 (2014) ("Kansas' DUI law is a self-contained criminal statute, which means that all essential components of the crime, including the elements, severity levels, and applicable sentences, are included within the statute."). In other words, what's required or good for Chapter 21 isn't necessarily so for K.S.A. 8-1567. As the *Reese* court explained:  "Given that the DUI statute provides its own sentencing provisions, cases relating to the proper application of the [revised] Kansas Sentencing Guidelines Act (KSGA) are of minimal precedential value." 300 Kan. at 654. By its own pronouncement, then, the Kansas Supreme Court should not construe *Wetrich* to be controlling authority for K.S.A. 8-1567 and ought to treat it as advisory guidance to the extent it might be analogous.

*C.* Wetrich *Inapposite as Analogous Authority*

As we explain, the analogy between comparing out-of-state convictions for criminal history purposes under Chapter 21 generally, on the one hand, and the particularized use of out-of-state convictions for impaired driving offenses in making charging and sentencing decisions under K.S.A. 8-1567, on the other, is not an especially tight one. Moreover, after *Wetrich* and before Mejia's arrest, the Kansas Legislature amended K.S.A. 8-1567 to ward off the application of *Wetrich*. See L. 2018, ch. 106, § 13. Again, as we explain, the legislative intent behind the amendment is quite apparent, although the way it functions in practice isn't as clear.

*1. Issue and Holding in* Wetrich

We first look at the Chapter 21 sentencing issue decided in *Wetrich*. There, Wetrich faced sentencing on multiple felonies in Johnson County District Court. Under

5

the sentencing guidelines, Wetrich's presumptive prison terms for those felonies depended, in part, on his criminal history that included a Missouri burglary conviction. The legal dispute focused on how that Missouri conviction should be scored in determining Wetrich's criminal history.

Under K.S.A. 2017 Supp. 21-6811(e)(2)(A) and (3), an out-of-state felony conviction should be classified as a person felony if the "comparable" Kansas crime were designated a person offense. If there were no comparable Kansas crime, the out-of-state felony conviction should be classified as a nonperson felony. Person felonies have a markedly greater impact on a defendant's criminal history score and the resulting presumptive term of imprisonment than do nonperson felonies. Before the Kansas Supreme Court decided *Wetrich*, the district courts and the Court of Appeals construed the statutory term "comparable" to mean "similar to," so an out-of-state conviction for a crime that generally replicated a Kansas crime would be classified as a person or nonperson offense consistent with the Kansas crime. In some instances, the out-of-state statute might criminalize a broader range of conduct than the Kansas criminal statute. See, e.g., *State v. Moore*, 52 Kan. App. 2d 799, 813-14, 377 P.3d 1162 (2016) (citing *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 [2014]).

The *Wetrich* court found the word "comparable" as used in K.S.A. 2017 Supp. 21-6811(e)(3) to be ambiguous in that it could mean "'[c]apable of being compared'" or "'[l]ike or equivalent'" or "'akin . . . close'" or "'identical . . . without distinction.'" 307 Kan. at 560. To resolve the ambiguity, the court looked at how the sentencing guidelines should be construed to promote like punishments for similarly situated defendants—a principal legislative purpose in adopting the guidelines. 307 Kan. at 560-61. The court reasoned that uniformity in sentencing would be fostered by requiring that the statutory elements of an out-of-state conviction be the same as or narrower than the elements of the "comparable" Kansas statute for criminal history purposes. That is, an out-of-state crime would not be comparable to a Kansas crime if its statutory definition criminalized more

6

conduct than a similar Kansas statute. 307 Kan. at 561-62. As a result, a conviction resting on a broader out-of-state statute would have to be scored as a nonperson offense in determining a criminal defendant's criminal history. Wetrich benefited from that new rule by having his Missouri burglary conviction reclassified as a nonperson felony. See 307 Kan. at 563-64.

Without that limitation on comparable offenses, the court feared rampant "ad hoc" decisions among the district courts in classifying out-of-state convictions for criminal history purposes. 307 Kan. at 561. One district court might view a particular out-of-state conviction as sufficiently similar to a particular Kansas crime whereas another district court would not. That would lead to differing criminal histories and differing presumptive sentences for similarly situated defendants. Given the number of crimes identified in Chapter 21, the number of potentially comparable crimes in the remaining 49 states, and the number of district courts making comparisons, the scale of the potential deviations across cases would be, to put it mildly, large. The Legislature has since amended K.S.A. 21-6811(e)(3) to change how out-of-state convictions are classified as person or nonperson offenses. The issue for us, however, is whether the method of analysis and result in *Wetrich* apply by analogy to K.S.A. 8-1567, so the current version of K.S.A. 21-6811(e)(3) has no direct relevance to our inquiry.

### 2. *Focused Scope and Public Policies of K.S.A. 8-1567 Distinguish* Wetrich

The rule and rationale of *Wetrich* do not ineluctably carry over to the charging and sentencing of recidivist drunk drivers under K.S.A. 8-1567. To the contrary, there are good reasons to conclude they don't. First, of course, is the court's own cleaving of Chapter 21 crimes from K.S.A. 8-1567 in *Reese*.

In addition, the focused public safety policies that animate the charging and sentencing enhancements in K.S.A. 8-1567 coupled with the narrow scope of the targeted

7

behavior largely erase the concerns in *Wetrich* about substantial sentencing disparities resulting from the sheer breadth of the criminal code. To state the obvious, K.S.A. 8-1567 punishes a driver for operating or attempting to operate a motor vehicle under the influence of alcohol or other intoxicants. The statute prohibits operating a motor vehicle if a person is "incapable of safely driving." K.S.A. 2019 Supp. 8-1567(a)(3). And it prohibits driving with a blood-alcohol level of 0.08 or more regardless of the degree of impairment or having a blood-alcohol level that high within three hours after driving. K.S.A. 2019 Supp. 8-1567(a)(1) and (2). That's a considerably more confined ballpark than the widely varied conduct criminalized in Chapter 21, ranging from murder to theft to bribing public officials.

For decades, legislative bodies and courts have recognized the special danger drunk drivers pose to other motorists and, hence, the public at large. *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2166, 195 L. Ed. 2d 560 (2016) ("Drunk drivers take a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year."); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990) (likening the deaths and injuries caused by drunk drivers to losses "'only heard of on the battlefield'") (quoting *Breithaupt v. Abram*, 352 U.S. 432, 439, 77 S. Ct. 408, 1 L. Ed. 2d 448 [1957]); *State v. Sedillos*, 279 Kan. 777, 784-85, 112 P.3d 854 (2005); *State v. Kitzman*, 240 Kan. 191, 194, 727 P.2d 491 (1986). In turn, legislatures have regularly revised DUI statutes to make them more effective in discouraging drunk driving. See *Birchfield*, 136 S. Ct. at 2169; *Sedillos*, 279 Kan. at 784-85. And police agencies have deployed various enforcement tools, such as DUI checkpoints and saturation patrols targeting impaired drivers, to both deter and intercept drunk drivers. See *Sitz*, 496 U.S. at 447 (DUI checkpoints constitutionally permissible if conducted within certain guidelines).

8

Consistent with those enforcement efforts, the Kansas Legislature has enacted escalating penalties for successive DUI convictions to deter recidivism. See K.S.A. 2019 Supp. 8-1567(b)(1)(A)-(E). In addition, a driver with two previous DUI convictions, including one in the past 10 years, or three DUI convictions any time after July 1, 2001, faces a felony rather than a misdemeanor if he or she is again charged with DUI. See K.S.A. 2019 Supp. 8-1567(b)(1)(D) and (i)(1). Felony convictions carry significant collateral consequences misdemeanor convictions do not. See *State v. Dugan*, 47 Kan. App. 2d 582, 600-01, 276 P.3d 819 (2012). And that brings the issue in Mejia's case front and center: What out-of-state convictions count as predicates for a felony charge or increased punishments under K.S.A. 2019 Supp. 8-1567?

Two subsections of K.S.A. 8-1567 yield the answer. First, K.S.A. 2019 Supp. 8-1567(i)(3) defines "conviction" to include "a violation of . . . any law of another jurisdiction that would constitute an offense that is comparable to" a DUI under K.S.A. 8-1567(a) or several other offenses that also require the operation of a motor vehicle or a vessel while intoxicated. Second, after the Kansas Supreme Court issued *Wetrich* and before Mejia's arrest, the Legislature added clarifying language in K.S.A. 2019 Supp. 8-1567(j) explaining comparability:

> "For the purposes of determining whether an offense is comparable, the following shall be considered:
>> "(1) The name of the out-of-jurisdiction offense;
>> "(2) the elements of the out-of-jurisdiction offense; and
>> "(3) whether the out-of-jurisdiction offense prohibits similar conduct to the
> conduct prohibited by the closest approximate Kansas offense." L. 2018, ch. 106, § 13.

The two subsections should be considered together. As a practical matter, the three-factor test for comparability in K.S.A. 2019 Supp. 8-1567(j) turns on the elements of the out-of-state offense. Presumably, the name of a statute proscribing conduct would include some description of that conduct generally conforming to the elements of the

9

offense. And a determination of the prohibited conduct identified in the out-of-state offense would require a review of the statutory elements, since that's their fundamental purpose. But, as described in K.S.A. 2019 Supp. 8-1567(j)(3), the elements need only be "similar" to the elements of DUI in K.S.A. 2019 Supp. 8-1567(a) or the other listed offenses, all of which also include the operation of vehicles under the influence. The Legislature's use of the word "similar" certainly suggests an out-of-state conviction need not match a conviction under K.S.A. 2019 Supp. 8-1567(a) to be considered "comparable" for purposes of charging and punishing a recidivist. See The American Heritage College Dictionary 1292 (4th ed. 2004) (defining "similar" as "[r]elated in appearance or nature; alike though not identical"); see also *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017) (words of statute typically given their ordinary meaning, absent specialized statutory definition; common dictionaries appropriate source for those usual meanings). In ordinary usage, then, similarity conveys a qualitative likeness—things that have material common attributes, though there may be differences. So performing in a play would be both similar to (and broader than) musical theater specifically and similar to (but narrower than) acting generally. It wouldn't be particularly like skydiving or carpentry.

### 3. Construing Statutory Purpose of Comparability of Predicate Offenses

In construing a comprehensive statutory scheme such as the one for identifying and punishing driving under the influence, an appellate court must, as a first priority, strive to honor the legislative intent and purpose. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016); *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). The court should look initially to the words of a statute to discern legislative intent. *Barlow*, 303 Kan. at 813. If the operative language is open to more than one reasonable interpretation, a court may consider the overall statutory purpose and favor a reading that comes to a "consistent, harmonious, and sensible" result effectuating that purpose. *In re Marriage of Traster*, 301 Kan. at 98. The court may also review the legislative history of

the statute and apply canons of construction to hone otherwise ambiguous language. *Barlow*, 303 Kan. at 813.

As we parse the statutory language here, we presume the Kansas Supreme Court's linguistic premise in deciding *Wetrich* that the word "comparable"—common to K.S.A. 2019 Supp. 8-1567(i)(3) and K.S.A. 2019 Supp. 21-6811(e)(3)—is ambiguous and would be so in both statutes. The recent amendment to K.S.A. 8-1567 displays a legislative intent to avert *Wetrich*'s the-same-as-or-narrower-than test for comparable out-of-state convictions when it comes to DUIs. The amendment, in that sense, clarified the meaning of the existing statutory language rather than changing it, reflecting a legislative effort to inoculate K.S.A. 8-1567 against any argument that *Wetrich* should govern by analogy. See *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458-59, 264 P.3d 102 (2011) (discussing purpose and effect of clarifying amendment). To assess the meaning of the statutory language, given the presumed ambiguity of "comparable" in describing relevant out-of-state convictions triggering the recidivist provisions of K.S.A. 8-1567, we may consider legislative history. Particularly instructive here is the explanatory introduction to the bill that became K.S.A. 8-1567(j):

> "WHEREAS, The Legislature intends that the provisions of this act related to comparability of an out-of-jurisdiction offense to a Kansas offense shall be liberally construed to allow comparable offenses, regardless of whether the elements are identical to or narrower than the corresponding Kansas offense, to be included in a person's criminal history; and
> "WHEREAS, The Legislature intends to promote the inclusion of convictions for such offenses in a person's criminal history, including, but not limited to, any violation of: . . . Missouri, V.A.M.S. § 577.010 or V.A.M.S. § 577.012." L. 2018, ch. 106, Preamble.

The introductory "whereas" clauses of a bill typically do not become part of the statute, as was true here; but they may shine a bright light on legislative intent, as is also

11

true here. The purpose of K.S.A. 2019 Supp. 8-1567(j) is to require broad consideration of "comparable" predicate offenses for purposes of imposing felony charges and escalated penalties on repeat DUI offenders. The Legislature specifically rejected *Wetrich*'s considerably more constrained interpretation of K.S.A. 2017 Supp. 21-6811 and, conspicuously for our purposes, cited Mo. Rev. Stat. § 577.010 as illustrative of a comparable statute. In short, the Legislature intended that out-of-state convictions under statutes proscribing broader conduct than K.S.A. 8-1567(a) trigger the recidivist provisions under K.S.A. 8-1567(b), so long as the conduct is similar.

Unlike the district court, we do not see *Wetrich* overriding the legislative intent animating the use of similar, though broader, out-of-state convictions under K.S.A. 8-1567(b). Although *Wetrich* alludes to constitutional concerns—a point we address shortly—the decision rests on a statutory ground tied to the criminal code as a whole: The fear that similarly situated defendants will receive disparate sentences because the innumerable permutations of Kansas crimes and potentially "comparable" out-of-state crimes for purposes of scoring their criminal histories will lead district courts to discordant results. However real that danger may be in determining criminal histories for defendants convicted of Chapter 21 crimes, it is not replicated under K.S.A. 8-1567.

To be sure, similarly situated defendants should face comparable charges for repeatedly driving under the influence—misdemeanors or felonies—and comparable punishments upon conviction. But the universe of comparable offenses available to make those determinations is relatively circumscribed in that only convictions dependent upon conduct similar to that proscribed in K.S.A. 8-1567 will make the cut. That substantially curtails the chances of conflicting outcomes from different district courts. So does the requirement that comparability of the out-of-state conviction must be determined using only the statutory elements of the offense measured against the elements of the violations in K.S.A. 8-1567(a). The particular facts supporting the defendant's out-of-state conviction are irrelevant and cannot be considered. The use of elements alone removes all

12

kinds of line-drawing dependent upon case-specific circumstances that could readily foster disparate results. An elements-based comparison to the exclusion of case-specific circumstances also eliminates any potential constitutional defect grounded in judicial fact-finding usurping a defendant's right to have a jury determine aggravating facts that elevate the permissible punishment above a stated statutory maximum. See *Apprendi*, 530 U.S. at 490; *Dickey*, 301 Kan. at 1021.[1]

[1]The *Wetrich* court expressed some reservation that *Apprendi* and its application in *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 2252-53, 195 L. Ed. 2d 604 (2016), might constitutionally mandate a requirement that an out-of-state conviction used in calculating a defendant's criminal history be based on a statute no broader than the comparable Kansas crime. *Wetrich*, 307 Kan. at 558. The court, however, did not examine the constitutional issue because it resolved the case on statutory grounds. 307 Kan. at 558. There doesn't appear to be a constitutional problem. The question in *Mathis* dealt with whether the defendant's Iowa burglary conviction would qualify as a predicate crime to increase his sentence under the federal Armed Career Criminal Act. Under the Act, the defendant's crime would have to be the same as or narrower than "generic burglary" used as the template for determining a qualifying predicate crime. That reflects a statutory requirement under the Act. The Court in *Mathis*, however, held that a federal district court would engage in impermissible fact-finding violating *Apprendi* if it considered the case-specific facts of the defendant's burglary conviction in determining whether the crime fit within the scope of a "generic burglary." The determination could be made only by looking at the elements of the crime as set out in the Iowa burglary statute. 136 S. Ct. at 2253. Under K.S.A. 2019 Supp. 8-1567(i)(3) and (j), there is no analogous issue, since the comparability of predicate offenses turns on their elements alone. And an elements-to-elements comparison requires no more than a legal conclusion devoid of judicial fact-finding. The dissent fails to appreciate this difference when it suggests that *Apprendi* and *Mathis* constitutionally mandate a defendant's out-of-state conviction have the same or narrower elements than the comparable Kansas crime to be scored as a person offense for criminal history purposes. So long as the comparison rests on the statutory elements there is no judicial fact-finding implicating the Sixth Amendment right to jury trial. See *Mathis*, 136 S. Ct. at 2252 (Given *Apprendi*, a district court "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.").

*D. Applying Legislative Standard for Comparability of Predicate Offenses*

In a DUI prosecution, the Kansas Legislature intends comparable out-of-state convictions to include those under statutes that proscribe broader conduct than K.S.A. 8-1567. The Legislature's use of the word "similar" in K.S.A. 2019 Supp. 8-1567(j)(3) to describe the type of proscribed conduct qualifying an out-of-state conviction as comparable points to that conclusion. The legislative history, in turn, spotlights the precise intent and identifies Mo. Rev. Stat. § 577.010 as illustrative of the legislative design and the public policy behind it. As we have suggested, the proscription in Mo. Rev. Stat. § 577.010 is unadorned simplicity: A person is guilty if he or she "operates a vehicle in an intoxicated condition." The term "intoxicated condition" is separately defined as "under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Mo. Rev. Stat. § 577.001.13. In 2014, the Missouri Legislature expanded the statute, effective January 1, 2017, to cover the operation of a "vehicle" rather than just a "motor vehicle." Neither of those terms has been statutorily defined in Chapter 577 governing public safety offenses.

We presume Mo. Rev. Stat. § 557.010 is broader than K.S.A. 8-1567(a) in at least two respects. First, the statutorily defined "intoxicated condition" required under Missouri law probably reflects a lesser degree of impairment than being "incapable of safely driving" under K.S.A. 8-1567(a)(3). As a practical matter, the gap may not be all that great insofar as law enforcement officers in both states often initiate traffic stops based on marked driving errors, such as running a red light, or a series of comparatively minor mistakes, such as repeatedly weaving within a lane absent some obvious external reason, that can be indicative of significant impairment. That's not always true, of course. Some DUI arrests begin with minor infractions, but those tend to be cases built on blood-alcohol tests showing the driver over the 0.08 statutory limit. Those prosecutions in either state require no showing of impairment to convict. See K.S.A. 8-1567(a)(1), (2); Mo. Rev. Stat. § 577.012.1(1).

14

But the required comparability of convictions under Mo. Rev. Stat. § 577.010 as predicate offenses for prosecutions under K.S.A. 8-1567 depends upon the statutory elements of each State's offense and any relevant statutory definitions or controlling case authority illuminating those elements. By that standard, Mo. Rev. Stat. § 577.010 is almost certainly broader based on the requisite degree of intoxication, and we presume it to be.

As of January 2017, the kinds of vehicles covered under Mo. Rev. Stat. § 577.010 are broader than those covered under K.S.A. 8-1567—a real difference in the statutes, although largely an academic one in the run of prosecutions and convictions. The record indicates Mejia's Missouri convictions preceded the amendment. But the point is relevant in assessing the Kansas Legislature's intent in 2018 in amending K.S.A. 8-1567(j) to explain comparable offenses. Because the current Missouri statute covers vehicles that K.S.A. 8-1567(a) does not, its elements are necessarily broader than those of a Kansas DUI in that respect, as well.

For example, under the old version of Mo. Rev. Stat. § 577.010, the Missouri appellate courts held that a motorized bicycle qualified as a "motor vehicle." See *State v. Slavens*, 375 S.W.3d 915, 918 (Mo. App. 2012) (citing *State v. LaPlante*, 148 S.W.3d 347, 350-51 [Mo. App. 2004]). By parity of reasoning, a regular bicycle ought to be considered a "vehicle" under the current version of Mo. Rev. Stat. § 577.010 absent a specialized statutory definition. Merriam-Webster's Collegiate Dictionary 1305 (10th ed. 2001) (defining "vehicle" as "a means of carrying or transporting something" such as a motor vehicle or some other "mechanized equipment"). So an intoxicated bicyclist presumably can now be convicted of impaired driving in Missouri. The Missouri appellate courts do not appear to have yet ruled on the issue.[2]

15

[2]Although drunk bicyclists don't generate the same degree of danger as drunk motorists—bicycles don't pack the same lethal force as motor vehicles—they do pose identifiable hazards. They certainly are dangerous to themselves. And erratic bicyclists (drunk or not) become obstacles motorists have to navigate as expedience sometimes overtakes prudence with unfortunately consequences.

Kansas, however, has a limiting statutory definition of the word "vehicle" as used in K.S.A. 8-1567 and for other traffic rules and offenses. As defined in K.S.A. 2019 Supp. 8-1485, a vehicle is "every device" for transporting "any person or property. . . upon a highway" with three exceptions including "devices moved by human power." A bicycle comes within that exception. See *City of Wichita v. Hackett*, 275 Kan. 848, Syl. ¶ 4, 69 P.3d 621 (2003). In short, drunk bicyclists can be convicted under Mo. Rev. Stat. § 577.010 but not under K.S.A. 8-1567. And based purely on an elements comparison, any conviction under Mo. Rev. Stat. § 577.010 for conduct occurring after January 1, 2017, would be broader than a conviction under K.S.A. 8-1567(a) for that reason. Determining the type of vehicle would require case-specific fact-finding exceeding the elements of the offense, thereby overstepping the statutory directive in K.S.A. 2019 Supp. 8-1567(j) and likely contravening a defendant's constitutional jury trial rights as protected in *Apprendi* and later authority.

Despite the broad scope of Mo. Rev. Stat. § 577.010, the Kansas Legislature plainly intended to permit a conviction under that statute to serve as a predicate for enhanced charging and sentencing under K.S.A. 8-1567. That's true even at the outer reaches of Mo. Rev. Stat. § 577.010 proscribing conduct that would not support a DUI conviction in Kansas. The result isn't anomalous. A person who has been convicted in another jurisdiction of operating a vehicle while impaired and then violates K.S.A. 8-1567 is likely a scofflaw, someone with a serious substance abuse problem, and very possibly both. Given the danger drunk drivers pose, the Legislature may deploy its police power to increase the punishment of those who don't care enough to control their antisocial behavior or otherwise lack the incentive to get professional help in controlling

what they cannot on their own. See *State v. Bolin*, 200 Kan. 369, 370-71, 436 P.2d 978 (1968) (Legislature validly exercises police power in defining particular acts as criminal); *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 190, 959 P.2d 940 (1998) (Legislature acts within police powers to proscribe and set punishment for driving under the influence).

In keeping with the breadth of the danger and the often catastrophic losses drunk drivers create, we take at face value the Legislature's directive in K.S.A. 2019 Supp. 8-1567(i)(3) that the language on comparable convictions from other jurisdictions be "liberally construed." To that end and consistent with the illustrative identification of Mo. Rev. Stat. § 577.010, we conclude the Legislature intends that an out-of-state conviction for an offense the elements of which entail the operation of a vehicle while the operator is impaired to some degree by alcohol, drugs, or both should be used to elevate the charge or sentence for a violation of K.S.A. 8-1567(a). Those convictions are for conduct "similar to" the conduct proscribed in Kansas, as the Legislature has used the phrase in K.S.A. 2019 Supp. 8-1567(j)(3) to identify predicate offenses. What we understand the Legislature to mean functionally eliminates any material *Wetrich*-type problem resulting from inconsistent determinations of comparability in the district courts, since the vast majority of out-of-state convictions for driving-under-the-influence offenses should be counted under K.S.A. 2019 Supp. 8-1567(i). Our understanding also avoids a potential due process problem identified in *Wetrich* when a sentencing statute contains impermissibly vague language causing district courts to rely on unmoored "guesswork and intuition" in making their decisions on punishment. 307 Kan. at 561 (quoting *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 2559, 192 L. Ed. 2d 569 [2015]).

Although we have not surveyed statutes proscribing DUI offenses in every state, we recognize that some of them may be considerably broader than K.S.A. 8-1567. For example, Arizona prohibits a person from driving if he or she "is impaired to the slightest

degree" by "any combination of liquor, drugs or vapor releasing substances." Ariz. Rev. Stat. Ann. § 28-1381(A)(1) (2019). The appellate courts seem to have applied that language as written. See *State v. Gill*, 234 Ariz. 186, 188, 319 P.3d 248 (Ct. App. 2014) (defendant's admission he had been drinking combined with circumstances of collision sufficient to show he was "'impaired to the slightest degree'"); *State v. Askren*, 147 Ariz. 436, 438, 710 P.2d 1091 (Ct. App. 1985) (no error in refusing defendant's proposed jury instruction that driver must be impaired "to some significant degree" to be convicted). We conclude the Kansas Legislature intends no dispensation from the recidivist provisions of K.S.A. 8-1567 for a driver with a conviction under a statute like Ariz. Rev. Stat. Ann. § 28-1381(A)(1).[3]

[3]The Arizona statute buffers the effect of the "slightest degree" standard for some drivers who take blood-alcohol tests. If the test result is 0.05 percent or less, the statute creates a rebuttable evidentiary presumption, the driver was not under the influence of alcohol. Ariz. Rev. Stat. Ann. § 28-1381(G)(1). The presumption makes no difference in determining whether an Arizona conviction should be treated as a predicate offense under K.S.A. 8-1567, since that determination turns solely on the elements of the Arizona offense. The evidentiary presumption does not alter the elements.

For that person with an Arizona conviction to later drive here while sufficiently impaired by alcohol to be incapable of doing so safely demonstrates the lesson *not* learned the Legislature has sought to remedy with enhanced penalties for recidivists in K.S.A. 8-1567. The same would be true of convictions from other jurisdictions where the elements entail the operation of a vehicle not covered under K.S.A. 8-1567. The expansive inclusion of out-of-state convictions as predicate offenses necessarily reduces the chances of disparate charging and sentencing decisions to a negligible level.

In any given case, the district court's inclusion or exclusion of a particular out-of-state conviction may be challenged in an appeal, as the State has done here. Appellate review provides an indirect check on disparate results across cases by providing guidance

to district courts in debatable circumstances going forward. But the legislative approach in K.S.A. 2019 Supp. 8-1567(i) and (j) ought to minimize those debates.

In the interest of completeness, we point out that none of the other convictions listed in K.S.A. 2019 Supp. 8-1567(i)(1) and (2) seems to foster any real difficulty in identifying "comparable" offenses from other jurisdictions to be used as predicates for charging and sentencing. Those convictions include:

• Convictions under K.S.A. 8-1567(a) dependent upon the driver having a blood-alcohol level of at least 0.08 percent without regard to impairment. Every state has a driving offense based solely on the operation of a vehicle with a blood-alcohol level of 0.08 percent or more. See Haston, Marijuana Legalization in Indiana:  Amending the Indiana Code to Protect Motorists and Pedestrians, 51 Ind. L. Rev. 557, 563 (2018); Taylor and Oberman, Drunk Driving Defense, Preface (8th ed. 2019 Supp.) ("All states have now enacted per se statutes criminalizing those drivers with a blood-alcohol level of .08 percent or higher."). The universality of that offense may be attributed to a federal requirement that states proscribe that conduct as a condition for receiving fully funded highway improvement grants. See 23 U.S.C. § 163 (2016).

• Convictions under K.S.A. 32-1131 for operating a vessel under the influence of alcohol or drugs. This may be thought of as a boating DUI insofar as the degree of impairment for conviction is the same as that in K.S.A. 8-1567(a). The term "vessel" means "any watercraft designed to be propelled by machinery, oars, paddles or wind action upon a sail for navigation on the water"—a comprehensive definition leaving scant room for contesting what's covered (quite a lot) and what isn't (very little). K.S.A. 32-1102(a). Jet skis are in; air mattresses are out. An assessment of an ostensibly comparable offense from another jurisdiction should not devolve into a fight over what's being piloted.

• Convictions for involuntary manslaughter or for aggravated battery when the defendant operated a motor vehicle in violation of K.S.A. 8-1567(a) as the mechanism causing death or the requisite bodily harm. A comparable out-of-state conviction would require a driver to cause the death of or bodily harm to another person by operating a vehicle in an impaired condition, as defined in that state's statutes. The determination would typically pivot on and parallel that for the comparability of a violation under K.S.A. 8-1567(a) and the other state's impaired driving statute. As we have already explained, the Legislature intends comparability to be liberally construed to reach offenses that proscribe the operation of almost any kind of vehicle with some degree of impairment.

*E. A Rejoinder to the Dissent*

In closing out our discussion, we briefly respond to the dissent's contention we have come to an impermissible conclusion. The dissent seems to rest on three primary points.

First, the dissent suggests *State v. Gensler*, 308 Kan. 674, 423 P.3d 488 (2018), overrules *Reese* and compels the application of *Wetrich* in determining the use of out-of-state convictions as predicate offenses under K.S.A. 8-1567. Neither is correct, especially in light of the amendment in K.S.A. 2019 Supp. 8-1567(j) designed to avoid just that result.

The *Gensler* court addressed when a DUI conviction under a Kansas municipal ordinance could be treated as a predicate offense—requiring interpretation of different statutory language in K.S.A. 8-1567. As provided in K.S.A. 2017 Supp. 8-1567(i)(1), a municipal conviction counted if the ordinance "'prohibits the acts [K.S.A. 8-1567(a)] prohibits.'" The court found the phrase to be ambiguous and in keeping with the rule of lenity construed it to mean proscriptions in the ordinance could not be more expansive

20

than those in K.S.A. 8-1567(a). If they were, then *any* conviction under the ordinance could not serve as a predicate offense in a prosecution under K.S.A. 8-1567. 308 Kan. at 681-82. In reaching that conclusion, the court analogized the issue of statutory construction to the one the United States Supreme Court dealt with in *Descamps v. United States*, 570 U.S. 254, 257-58, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), in construing the Armed Career Criminal Act. The court then offered an extended analysis of the elements of the Wichita DUI ordinance under which Gensler had been convicted and concluded the measure proscribed more conduct that K.S.A. 8-1567(a). The ordinance, therefore, did not come within the "prohibits the acts" standard in K.S.A. 2017 Supp. 8-1567(i)(1), and Gensler's municipal conviction did not qualify as a predicate offense. *Gensler*, 308 Kan. at 683-85. The dissent also cites a flock of other cases that concluded a conviction under the Wichita DUI ordinance could not be treated as a predicate offense.

But all of that is inapposite to the issue here. The language governing convictions for Kansas municipal ordinances did not refer to "comparable" offenses or "similar conduct" as the Legislature has now directed for identifying qualifying out-of-state convictions. The *Gensler* court noted that difference in language and the then-recent amendments to K.S.A. 8-1567(i) and (j), see L. 2018, ch. 106, § 13, but recognized they were inapplicable to the question of statutory construction in that case. 308 Kan. at 679.

So nothing in the substantive ruling in *Gensler* or in the other cases the dissent cites conflicts with our treatment of Mejia's Missouri convictions. More to the dissent's point, however, the *Gensler* court did not mention *Reese*, let alone purport to distinguish or overrule it. See *United States v. Rodriguez*, 311 F.3d 435, 439 (1st Cir. 2002) ("Implied overrulings are disfavored in the law."). The court simply interpreted the statutory language of one part of K.S.A. 8-1567—an exercise that in no way called into question the division *Reese* drew between that statute and Chapter 21. The *Gensler* opinion mentions *Wetrich* only twice: first as an example of a "sentencing classification

21

question" decided on statutory rather than constitutional grounds; and then for the well-accepted proposition that courts avoid reaching constitutional issues if cases can be decided on other grounds. 308 Kan. at 678-79. The *Gensler* court never intimates, let alone holds, that *Wetrich*'s the-same-as-or-narrower-than standard for determining the criminal histories of defendants convicted of Chapter 21 felonies should be reflexively applied to K.S.A. 8-1567 or, more particularly, to out-of-state DUI convictions.

The dissent next seems to say that our conclusion invites impermissible judicial fact-finding, contrary to *Apprendi*, *Dickey*, and related case authority. We fail to see how that can be correct. As we have explained, the required comparison of an out-of-state conviction to K.S.A. 8-1567(a) turns solely on the statutory elements of the respective offenses. The facts underlying a given conviction are irrelevant to the determination and should not be considered. A statutory elements-to-elements comparison is purely a legal question. In short, the legislative method for determining comparable out-of-state convictions does not implicate a defendant's Sixth Amendment jury trial rights. We have acknowledged an entirely different constitutional due process concern—district courts might come to different legal conclusions about the comparability of a given state's DUI statute. But, as we have said, we see that concern as largely academic because the Legislature intends to treat any out-of-state conviction for operating some kind of vehicle while the operator is impaired to some degree as "similar conduct" and, thus, a predicate offense under K.S.A. 2019 Supp. 8-1567(i)(3).

Finally, the dissent chides us for treating K.S.A. 2019 Supp. 8-1567(i) and (j) as ambiguous and looking at legislative history to resolve the ambiguity. In doing so, we have simply followed the Kansas Supreme Court's lead in construing the word "comparable" and in parsing the meaning of comparability, as we have already explained. But even if we were to confine our analysis to the statutory language of K.S.A. 8-1567, the result would be the same. Again, as we have said, the comparability of an out-of-state conviction as a predicate offense under K.S.A. 2019 Supp. 8-1567(i)(3) is informed by

22

the criteria in K.S.A. 2019 Supp. 8-1567(j). Pertinent here, the predicate conviction need only be for "similar conduct" to the proscription in K.S.A. 2019 Supp. 8-1567(a). The phrase naturally lends itself to both broader activity and narrower activity. Those statutory pronouncements, then, channel the identification of predicate offenses to the result we have otherwise reached. That is the most reasonable construction of the governing statutory language, with or without the obvious reinforcement found in the legislative history.

*F. Conclusion*

The State properly relied on three convictions Mejia had for driving under the influence in Missouri in violation of Mo. Rev. Stat. § 577.010 to charge him with a felony violation of K.S.A. 8-1567, even though the Missouri statute proscribes a broader range of conduct. Mejia's argument for and the district court's reliance on *Wetrich* to discard those convictions are misplaced. The *Wetrich* decision addresses a sentencing concern endemic to Chapter 21 because of the sheer number of crimes defined there. The concern is not replicated under K.S.A. 2019 Supp. 8-1567, especially given the Legislature's clear intent to expansively define the out-of-state convictions that constitute predicate offenses for charging and sentencing recidivists like Mejia.

We, therefore, find the district court erred in dismissing the felony DUI charge against Mejia. The district court should have recognized his Missouri convictions under Mo. Rev. Stat. § 577.010 for purposes of enhancing the charge from a misdemeanor to a felony.

We reverse and remand to the district court with directions to reinstate the felony DUI charge against Mejia and for further proceedings consistent with this opinion.

SCHROEDER, J., dissenting:  I respectfully dissent. At the outset I acknowledge the nature and purpose of Kansas' DUI laws increasing punishment scheme for recidivist offenders. Even so, the majority's reasoning and result rest on two faulty assumptions. First, the *Wetrich* line of cases is inapplicable to Kansas' DUI law, see *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), and, second, the meaning of the word "comparable" under K.S.A. 2019 Supp. 8-1567(i)(3) is ambiguous on its face. In finding *Wetrich* is inapplicable to these facts, the majority ignores our Supreme Court's recent decision in *State v. Gensler*, 308 Kan. 674, 683, 423 P.3d 488 (2018). And the majority unnecessarily invokes legislative intent by finding the word "comparable" is ambiguous. The majority's analysis should have started and ended with the text of Kansas' DUI law.

In *Gensler*, the district court used Gensler's previous DUI convictions under a Wichita municipal ordinance to enhance his state case to a felony. The applicable subsections of K.S.A. 2017 Supp. 8-1567 for determining whether Gensler's prior municipal convictions were comparable state offenses provided, in pertinent part:

> "'(i) For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:
>
> (1) Convictions for a violation of this section, or a violation of an ordinance of any city or resolution of any county *which prohibits the acts that this section prohibits*, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, shall be taken into account, but only convictions or diversions occurring on or after July 1, 2001.
>
> . . . .
>
> (3) "conviction" includes: . . . (B) conviction of a violation of an ordinance of a city in this state, a resolution of a county in this state or any law of another state which would constitute a crime described in subsection (i)(1) or (i)(2).'" *Gensler*, 308 Kan. at 679.

The *Gensler* court then reviewed with approval the categorical approach and modified categorical approach as applied to the revised Kansas Sentencing Guidelines Act, K.S.A. 2019 Supp. 21-6801 et seq., in *State v. Dickey*, 301 Kan. 1018, 1039, 350 P.3d 1054 (2015) (*Dickey I*), for the purpose of determining whether a prior municipal DUI conviction counted as a prior DUI conviction under K.S.A. 8-1567. *Gensler*, 308 Kan. at 681-83; see *Descamps v. United States*, 570 U.S. 254, 261-64, 269, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013) (developing categorical and modified categorical approach); *State v. Schrader*, 308 Kan. 708, 712, 423 P.3d 523 (2018) (noting *Gensler* approved of categorical and modified categorical approach in DUI context).

The *Gensler* court interpreted K.S.A. 2017 Supp. 8-1567(i)(1)'s language—"which prohibits the acts that this section prohibits"—to limit prior municipal DUI convictions usable as sentencing enhancements to those with elements the same as, or narrower than, K.S.A. 2017 Supp. 8-1567. 308 Kan. at 680-81. Applying the categorical approach, *Gensler* found the Wichita DUI ordinance's definition of "vehicle" was an indivisible element of the crime and, because the definition criminalized a broader range of conduct than K.S.A. 2017 Supp. 8-1567, it could not be used to enhance Gensler's state case to a felony. 308 Kan. at 683-85. The *Gensler* court noted: "To determine the precise nature of the 'vehicle' Gensler was operating would require a sentencing court to engage in its own fact-finding, which is impermissible." 308 Kan. at 685; see *Descamps*, 570 U.S. at 269 (sentence enhancement under Armed Career Criminal Act would "raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction").

The language under K.S.A. 2017 Supp. 8-1567(i)(1) interpreted by the *Gensler* court remains the same under the current statute. See K.S.A. 2019 Supp. 8-1567(i)(1). But the Legislature has amended K.S.A. 2019 Supp. 8-1567(i)(3)(B) to provide: "'conviction' includes: . . . conviction of a violation of . . . any law of another jurisdiction that would constitute an offense that is *comparable* to the offense described in subsection (i)(1) or (i)(2)." (Emphasis added.) Under K.S.A. 2019 Supp. 8-1567(j)(1)-(3), the

Legislature has also added three criteria for courts to apply when determining whether another jurisdiction's law is comparable.

Despite these changes to Kansas' DUI law, the *Gensler* court's outright approval of the *Wetrich* line of cases in the comparability analysis for DUI offenses must be followed. The Kansas Supreme Court has consistently followed *Gensler*, and our court has done the same. See, e.g., *Schrader*, 308 Kan. at 708; *State v. Lamone*, 308 Kan. 1101, 1103-04, 427 P.3d 47 (2018); *State v. Ramos*, No. 118,080, 2018 WL 4263371, at *2 (Kan. App. 2018) (unpublished opinion). Prior to G*ensler* other panels of this court followed the *Wetrich* line of cases while applying the previous version of K.S.A. 2016 Supp. 8-1567. See *State v. Navarro*, No. 117,563, 2018 WL 1545604, at *3 (Kan. App. 2018) (unpublished opinion) (finding we are duty bound to follow *Wetrich* and its companion cases); *State v. Chapman*, No. 117,063, 2018 WL 671908, at *1 (Kan. App. 2018) (finding we are bound to follow *Apprendi* and its line of cases). Our court is bound by Kansas Supreme Court precedent absent some indication the court is departing from its position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

In light of *Gensler*, the majority's reliance on *State v. Reese*, 300 Kan. 650, 654, 333 P.3d 149 (2014), on the narrow scope of targeted behavior in DUI-type offenses, and on the enhanced penalties for recidivists under K.S.A. 2019 Supp. 8-1567(b)(1)(A)-(E) for its position that the *Wetrich* line of cases do not apply to Kansas' DUI law is unpersuasive. See slip op. at 4-5, 7, 16-17. The *Gensler* court applied *Wetrich*'s statutory framework despite these considerations, and I am bound to do the same.

K.S.A. 2019 Supp. 8-1567(j)(1) and (2) instruct courts to consider the out-of-jurisdiction offense's name and elements. And under K.S.A. 2019 Supp. 8-1567(j)(3), courts must also consider "whether the out-of-jurisdiction offense prohibits similar conduct to . . . the closest approximate Kansas offense." The majority reasons the criteria under subsections (j)(2) and (3) must be considered together and, therefore, "the elements

26

need only be 'similar' to the elements of DUI in K.S.A. 2019 Supp. 8-1567(a) or the other listed offenses." Slip op. at 9. The majority's interpretation, however, invites impermissible judicial fact-finding in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by giving courts broad discretion to determine whether a person committed the out-of-jurisdiction offense in a manner "similar enough" to K.S.A. 2019 Supp. 8-1567. "Similar enough" is not the same as the "identical to or narrower than" elements-based approach. See *Wetrich*, 307 Kan. at 562. Given our duty to apply statutes in a constitutional manner and under existing caselaw, subsections (j)(2) and (3) of K.S.A. 2019 Supp. 8-1567 should be interpreted under the identical to or narrower than elements-based approach. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 276-77, 75 P.3d 226 (2003) (courts have duty to construe statutes in constitutional manner if possible).

Nothing in the plain language of K.S.A. 2019 Supp. 8-1567(j)(2)-(3) prevents a court from following the analyses in *Gensler* and *Wetrich*. Although subsection (j)(2) requires courts to look at the elements of the prior conviction, it does not direct courts to look at the elements in any particular manner. Subsection (j)(3) directs courts to consider whether the out-of-jurisdiction offense prohibits *similar conduct* to K.S.A. 2019 Supp. 8-1567. However, it does not provide any parameters for courts to gauge what "similar conduct" is prohibited. The majority has defined "'similar'" as "'[r]elated in appearance or nature; alike though not identical'" to further define "'comparable.'" Slip op. at 10. I see nothing in the definition of "similar" that provides something "broader" is comparable. See American Heritage College Dictionary 1292 (4th ed. 2004). Rather, something "narrower" could be "alike though not identical" to K.S.A. 2019 Supp. 8-1567. And something "identical to" K.S.A. 2019 Supp. 8-1567 would be "[r]elated in appearance or nature."

Thus, a district court can determine whether similar conduct is prohibited by using only the elements of the prior conviction to determine whether the prohibited conduct is

identical to or narrower than K.S.A. 2019 Supp. 8-1567. The majority openly acknowledges the elements of Missouri's DWI offense are broader than Kansas' DUI offense. In my view, the identical to or narrower than approach must be followed to avoid running afoul of *Apprendi* and its progeny.

The district court's reliance on *Wetrich* in its written order reflects this approach. It concluded the elements of the Missouri DWI offenses were not the same as, or narrower than, the elements of K.S.A. 2019 Supp. 8-1567; thus, Mejia's convictions under the Missouri statute could not be used to enhance his DUI charge to a felony. The district court's interpretation of K.S.A. 2019 Supp. 8-1567(j) reconciled the criteria under subsections (j)(1)-(3) as a whole, consistent with their plain meaning. Although the district court resolved the classification of Mejia's prior Missouri DWI convictions as matter of statutory interpretation, it recognized the "constitutional principles announced in *Apprendi* and its progeny . . . apply." See *Wetrich*, 307 Kan. at 558-59 (resolving scoring of out-of-state burglary conviction as matter of statutory interpretation); *State v. Dickey*, 305 Kan. 217, 221, 380 P.3d 230 (2016) (*Dickey II*) (classification of prior crimes has "thick overlay of constitutional law"); see also *State v. Coleman*, 311 Kan. 305, Syl. ¶ 2, 460 P.3d 368, 375 (2020) (finding pre-KSGA crimes comparable to current KSGA offenses where an earlier crime's elements are identical to, or narrower than, the applicable current offense). Therefore, under *Gensler*, the district court correctly relied on *Wetrich*'s statutory framework and *Apprendi*'s constitutional considerations when it found Mejia's prior Missouri DWI convictions could not be used to enhance his DUI charge to a felony.

The majority avoids *Wetrich*'s reach by finding the word "comparable" in K.S.A. 2019 Supp. 8-1567(i)(3) is ambiguous and invokes legislative intent. Slip op. at 10-11. The majority incorrectly reasons the word "comparable" is ambiguous on its face because *Wetrich* found a similar phrase—"comparable offenses"—ambiguous as used in K.S.A. 2017 Supp. 21-6811(e). Slip op. at 10; see 307 Kan. at 559. But unlike the statute in

*Wetrich*, K.S.A. 2019 Supp. 8-1567(j) sets out specific statutory criteria to determine whether a prior conviction is comparable.

There is no ambiguity in the criteria for determining whether an offense is comparable under K.S.A. 2019 Supp. 8-1567(i)(3). Rather, the plain language of subsection (j)(3) potentially invites courts to engage in fact-finding beyond the existence of a person's prior conviction. Still, courts can avoid this problem by doing as the district court did here. The Legislature could have added language within K.S.A. 2019 Supp. 8-1567's text requiring courts to include an offender's prior conviction under Mo. Rev. Stat. § 577.010 in his or her criminal history. In my reading of *Apprendi* and the line of cases that follow, nothing would prevent the Legislature from explicitly enumerating the municipal ordinances and/or out-of-state statutes it wants counted as prior DUI convictions. The Legislature proved itself quite capable of spelling these out in the preamble to the session law. But it did not include them in the text of the statute itself. Consequently, the Legislature's stated intent in the preamble to the session law to include out-of-jurisdiction offenses as comparable offenses "regardless of whether the elements are identical to or narrower than the corresponding Kansas offense" is irrelevant. See L. 2018, ch. 106, Preamble. The text of K.S.A. 2019 Supp. 8-1567 controls over the session law. "We should not seek ambiguity where none exists merely for the purpose of invoking the rule of liberal construction." *United States Fid. & Guar. Co. v. Western Cas. & Surety Co.*, 195 Kan. 603, 605, 408 P.2d 596 (1965).

For these reasons, I would find Mejia's prior Missouri DWI convictions cannot be used to enhance his charge to a felony DUI and the district court's dismissal of the charge at the preliminary hearing was proper.